# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:**     **THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| ALL ONE GOD FAITH, INC., *et al.,* | |
| Plaintiffs, | |
| v. | |
| UNITED STATES, | Consol. Court No. 20-00164 |
| Defendant, | |
| and | |
| CP KELCO U.S., INC., | |
| Defendant-Intervenor. | |

## ORDER

Upon consideration of plaintiffs' motions for judgment on the agency record, defendant's response and partial motion to dismiss, plaintiffs' replies and response, defendant's reply in support of its partial motion to dismiss, and all other pertinent papers, it is hereby

ORDERED that plaintiff Dr. Bronner's claims are dismissed; and it is further

ORDERED that plaintiffs' motions for judgment are denied and it is further

ORDERED that the final determination of U.S. Customs and Border Protection is sustained, and it is further

ORDERED that final judgment shall enter in favor of the United States.

_____
JUDGE

Dated: _____
        New York, New York

# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:    THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| ALL ONE GOD FAITH, INC., *et al.,* | |
| Plaintiffs, | |
| v. | |
| UNITED STATES, | Consol. Court No. 20-00164 |
| Defendant, | |
| and | Public Version |
| CP KELCO U.S., INC., | Confidential Information Removed From Pages 4, 7, 8, 20, 21 |
| Defendant-Intervenor. | |

## DEFENDANT'S PARTIAL MOTION TO DISMISS AND RESPONSE TO PLAINTIFFS' MOTIONS FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

Defendant, the United States, respectfully submits this response to the motions for judgment upon the agency record filed by the plaintiffs in this consolidated matter: All One God Faith Inc. d/b/a Dr. Bronner's Magic Soaps (Dr. Bronner's); Ascension Chemicals LLC (Ascension); GLoB Energy Corporation (GLoB); UMD Solutions LLC (UMD); and Crude Chem Technology LLC (Crude Chem). ECF Nos. 26-30. Plaintiffs challenge several aspects of U.S. Customs and Border Protection's (CBP) final determination as to evasion concerning certain entries of xanthan gum that plaintiffs claimed had been manufactured in India.

As an initial matter, Dr. Bronner's complaint should be dismissed because it protested CBP's liquidation of its entries before CBP, but failed to timely appeal the denial of those protests to this Court.

On the merits, as demonstrated below, it is not contested that the xanthan gum at issue was not manufactured in India – indeed, *no xanthan gum is manufactured in India.* Thus, each of the plaintiffs incorrectly represented the origin of the product, and failed to provide CBP with sufficient documentation to establish where the xanthan gum *did* originate, instead making general assertions that the product should be subject to a 0.0% duty rate. CBP's affirmative evasion determination is supported by substantial evidence and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Accordingly, we respectfully request that the Court deny plaintiffs' motions, and sustain CBP's evasion determination.

## I.   Administrative Determination Under Review

This lawsuit challenges CBP's final determination, issued under 19 U.S.C. § 1517(f), as to evasion for certain shipments of xanthan gum from the People's Republic of China (PRC). Confidential Notice of Final Determination as to Evasion in EAPA Consolidated Case No. 7281 (C.R. 116) (July 16, 2020) (July 16 Determination).

## II.   Issues Presented For Review

1.    Whether Dr. Bronner's complaint should be dismissed because it protested CBP's liquidation of its entries, but failed to timely appeal the denial of those protests to this Court.

2.    Whether CBP's evasion determination is supported by substantial evidence where it is not contested that the xanthan gum was produced in China – not India – notwithstanding the entry documents provided by plaintiffs.

## STATEMENT OF FACTS

On May 7, 2019, CBP's Trade Remedy Law Enforcement Directorate (TRLED), Office of Trade initiated an investigation under Title IV of the Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA), Pub. L. No. 114-125, 130 Stat. 122 (2016), commonly

2

referred to as the "Enforce and Protect Act" or "EAPA," to determine whether certain shipments of xanthan gum had been entered into the United States by means of evasion.  *See* Notice of Initiation of Investigation in Consolidated EAPA Case No. 7281 (C.R. 40) (August 12, 2019) (Notice of Initiation).

The investigation was initiated in response to allegations[1] by defendant-intervenor CP Kelco U.S. (CP Kelco) that xanthan gum from the PRC covered by antidumping duty order no. A-570-985 (the order) was being transshipped though India in order to evade antidumping duties. *See* CP Kelco's Allegation Letters and attachments (P.R. 21-22 (Crude Chem); 23-24 (GLoB); 25-26 (Ascension); 27-28 (Dr. Bronner's); 31-32 (UMD)).

Merchandise subject to the order is currently under an "all others" rate of 154.07%, though certain individually investigated entities have bene assigned lower rates.  The allegation letters asserted that, notwithstanding the fact that xanthan gum is produced in only four countries (Austria, France, the United States, and China), significant shipments of xanthan gum from India had been made in recent years.  *Id.*  In support of its allegations, CP Kelco attached data illustrating that xanthan gum is not produced in India, as well as import data showing that 81% of shipments into India under the subheading encompassing xanthan gum come from the PRC. *Id.*  CP Kelco also submitted data illustrating that imports of xanthan gum from the PRC to India had increased in recent years, whereas imports from other xanthan gum producing countries had decreased.  *Id.*

In response to the allegations, CBP issued requests for information to the plaintiffs,

---

1  CP Kelco raised allegations against nine separate entities, including all five plaintiffs to this matter.  *See* P.R. 1-10.  CBP ultimately found substantial evidence of evasion for seven entities – the plaintiffs to this matter, as well as Tdale Manufacturing & Distributing and Western Energy & Technologies LLC.  *See* P.R. 305 (Final Determination).

seeking, among other information, the relevant "{r}ecords from the India factory demonstrating that raw materials were obtained by the factory and were available for production …" as well as production records and "{a}ny other documents you can provide that may substantiate origin." C.R. 1-2, 5-7.

The plaintiffs each responded to the requests, as described in more detail below.  Four of the plaintiffs indicated that they imported the merchandise from an Indian exporter named Chem Fert Chemicals (Chem Fert); Dr. Bronner's indicated that it imported the merchandise from [                                    ] and [                        ].  None of the plaintiffs submitted documentation indicating that the shipments had actually been manufactured in India.  C.R. 113 at 3, 22-18 at 33.  CBP also sent requests for information to the three purported Indian manufacturers; Chem Fert and [          ] responded; [      ] did not.  *Id.* at 34.

As described below, no plaintiff contested that the xanthan gum was imported from India, though not produced in India.  C.R. 113.  However, because each plaintiff failed to submit documentation establishing who had actually produced the xanthan gum – in addition to the other evidence collected during the investigation – CBP determined that "substantial evidence exists demonstrating that the xanthan gum entered by {plaintiffs} during the period of investigation was of Chinese origin and transshipped through India, and is subject to the Chinawide entity rate for the AD order on xanthan gum from China."  C.R. 113 at 19, ECF No. 22-18 at pdf pg. 49 (final det.)

a.  *Ascension*

Ascension complied with CBP's request for information, providing a response on September 13, 2019, as well as additional factual information on November 25, 2019.  P.R. 174;

P.R. 244.  In its responses, Ascension confirmed that it had not verified Chem Fert's alleged

manufacturing processes, but rather had "placed reliance on Chem Fert Chemicals{'}

representation of their manufacturing and production capabilities."  P.R. 174, ECF No. 23-13 at

pdf pg. 113.

Ascension did not provide CBP with any production records establishing the actual

country of origin or producer of the shipments.  C.R. 113 at 4, ECF No. 22-18 at pdf pg. 35.

Rather, Ascension relied on publicly available shipment information from "Import Genius" for

the assertion that the xanthan gum had been produced and exported by a PRC entity excluded

from the order.  P.R. 210.

CBP rejected this, explaining that this third party information is not a substitute for

"documentation demonstrating the actual manufacturer and exporter of the specific merchandise

in question."  C.R. 113 at 6.  Moreover, CBP noted that, even if the data were of the sort that

could be relied upon by CBP, "the Import Genius shipment information does not even make

reference to the 'manufacturer'; 'producer'; or 'exporter' of the merchandise associated with the

shipments."  *Id.*  Thus, CBP explained, Ascension's "conclusions about the identity of the

Chinese exporter for the listed shipments merely rely on assumptions about the 'shipper'

information referenced in the Import Genius information."  *Id.*  CBP also noted that Ascension's

claimed manufacturer – Chem Fert – responded to CBP's requests, and indicated that it does not

produce xanthan gum but rather imports and repackages it.  *Id.*, *see also* C.R. 50.

Because neither Ascension nor its Indian exporter provided sufficient documentation to

determine which entity actually produced and exported the xanthan gum from the PRC, CBP

found that Ascension "did not act to the best of { its } abilities, justifying the application of

adverse inferences under 19 U.S.C. § 1517(c)(3)."  *Id.* at 7.  Accordingly, CBP applied an

adverse inference that the xanthan gum had been produced in China and not by the claimed

foreign manufacturers.  *Id*. at 18.

    b.    *Dr. Bronner's*

        a.   *Liquidation Of Entries*[2]

Dr. Bronner's entries were liquidated on April 19 and April 24, 2019.  Ex. A. French

Dec. ¶¶ 4-6.  Dr. Bronner's protested the liquidation of its entries on September 12 and

November 21, 2019.  *Id.* at ¶¶ 7-8.  The protests were denied on April 9 and April 21, 2020.  *Id.*

Dr. Bronner's filed its action in this Court on August 26, 2020.  *See* ECF No. 2.  Its complaint

makes no reference to the denial of the protests by CBP, and asserts that this Court possesses

subject matter jurisdiction over its allegations pursuant to 28 U.S.C. 1581(c).  *Id.* at ¶¶ 4-5.

        b.   *Responses To CBP's Requests For Information*

Dr. Bronner's responded to CBP's request for information on September 10, 2019, and

submitted additional factual information on November 22, 2019.  P.R. 117, 188-209; C.R. 54-79,

92-98.  Dr. Bronner's conceded that the xanthan gum it imported had not been produced in India,

but argued that, "because the manufacturer of the goods imported under such entries has been

excluded from the Order," no evasion occurred.  C.R. 101, ECF No. 22-16 at pdf pg. 242.

However, notwithstanding the large volume of data submitted, Dr. Bronner's failed to provide

documentation establishing which PRC producer produced the xanthan gum, or which entity

exported the xanthan gum from the PRC to India.  C.R. 113 at 8, ECF No. 22-18 at pdf pg. 38.

---

2  Defendant is moving to dismiss Dr. Bronner's complaint for lack of subject matter
jurisdiction because it protested CBP's liquidation of its entries, but failed to timely appeal the
denial of those protests to this Court.  We thus include factual background relevant to our
motion.

Rather, Dr. Bronner's provided certain documents, evidently created by the Indian exporter, referring to simply "Fufeng."[3]  *Id.* at 9.  However, CBP explained that "{t}he name Fufeng on a company document does not establish which exact company or companies are referenced, and the record contains information indicating there are other Chinese entities other than those in the Fufeng Group whose name contains the word 'Fufeng.'"

Dr. Bronner's also provided CBP with certain photographs – purporting to correspond to the subject entries –  showing cartons of xanthan gum bearing text reading "Produced by Fufeng" as well as "Country of Origin: China"  C.R. 95.  While CBP noted that the photographs were "consistent with information in sales documentation submitted by {Dr. Bronner's} for one of its three entries," it explained that, even "if one were to rely on such information, it would only apply to at most one of the multiple {Dr. Bronner's} entries during the period of investigation."  C.R. 113 at 10, ECF No. 22-18 at pdf pg. 40.  CBP also questioned how, if the images are indeed of the subject entries, such clearly marked merchandise would be incorrectly entered to begin with.  *Id.*  ("if the merchandise imported by {Dr. Bronner's} from [          ] was so clearly identified with markings indicating 'country of origin' of China and 'manufactured by' Shandong Fufeng … it is not evident why, at the time of entry the importer identified India as the country of origin and [          ] as the manufacturer, and did not correct such a classification until after notified by CBP.")  Finally, CBP explained that the photographs could not be relied upon to establish manufacturer and exporter data because they indicated that the xanthan gum had been [                                        ], an entity that

---

3 While "Fufeng" was given business confidential treatment in Dr. Bronner's administrative filings, the name is not redacted in its brief to this Court.  *See* ECF No. 26.  We thus assume no objection to treating this information as public.

neither Dr. Bronner's nor the Indian exporter, [                    ], had identified in their responses to CBP's information requests.  *Id.* at 10-11.

Because neither Dr. Bronner's nor its Indian exporter provided sufficient documentation to determine which entity actually produced and exported the xanthan gum from the PRC, CBP found that Dr. Bronner's "did not act to the best of { its } abilities, justifying the application of adverse inferences under 19 U.S.C. § 1517(c)(3)."  *Id.* at 11.  Accordingly, CBP applied an adverse inference that the xanthan gum had been produced in China and not by the claimed foreign manufacturers.  *Id*. at 18.

       c.   *UMD*

UMD responded to CBP's request for information on September 13, 2019, and submitted additional factual information on November 23, 2019.  C.R. 91; P.R. 236-243.  UMD conceded that the xanthan gum it imported had not been produced in India, but argued that the xanthan gum had been manufactured by "Fufeng", an entity which UMD asserted was subject to a 0.0% dumping margin.  P.R. 257.  Rather than provide documentation substantiating its claim that "Fufeng" produced and exported the xanthan gum, UMD relied on publicly available shipment information from "Import Genius" for the assertion that the xanthan gum had been produced and exported by a PRC entity excluded from the order.  *Id.*

CBP rejected this, explaining that the data provided only referred to the "shipper" of merchandise, and "does not even make reference to 'manufacturer'; 'producer'; or 'exporter' of the merchandise associated with the shipments."  C.R. 113 at 13, ECF no. 22-18 at pdf pg. 43.  Thus, "conclusions about the identity of the Chinese exporter for the listed shipments merely rely on assumptions about the 'shipper' information referenced in the Import Genius information."  *Id.*  Moreover, CBP explained that importers are required to provide firsthand documentation of

the producer and exporter when requested, rather than rely on third party data.  *Id*. at 12.  CBP

also noted that UMD's claimed manufacturer – Chem Fert – responded to CBP's requests, and

indicated that it does not produce xanthan gum but rather imports and repackages it.  *Id., see also*

C.R. 50.

Because neither UMD nor its Indian exporter provided sufficient documentation to

determine which entity actually produced and exported the xanthan gum from the PRC, CBP

found that UMD "did not act to the best of { its } abilities, justifying the application of adverse

inferences under 19 U.S.C. § 1517(c)(3)."  *Id.* at 13.  Accordingly, CBP applied an adverse

inference that the xanthan gum had been produced in China and not by the claimed foreign

manufacturers.  *Id*. at 18.

     d.   *GLoB*

GLoB responded to CBP's request for information on September 13, 2019, and submitted

additional factual information on November 23, 2019.  P.R. 177; P.R. 226-234.  GLoB conceded

that the xanthan gum had not been produced in India, but also argued that the merchandise would

have been excluded from the order and thus no evasion occurred.  *Id.*  GLoB did not provide

documentation as to which entity had produced and exported the xanthan gum from the PRC, but

rather relied on publicly available data from "Import Genius" for the assertion that "Fufeng" both

produced and exported the xanthan gum.  P.R. 226-227.

CBP rejected GLoB's assertions, noting that the documentation only referred to the

"shipper" of the xanthan gum and "does not even make reference to 'manufacturer'; 'producer';

or 'exporter' of the merchandise associated with the shipments."  C.R. 113, ECF No. 22-18 at

pdf pg. 43.  Thus, CBP explained, "{t}he conclusions about the identity of the Chinese exporter

for the listed shipments merely rely on assumptions about the 'shipper' information referenced in

the Import Genius information." *Id.*  Moreover, CBP noted that, while third party information –

such as the "Import Genius" data – is sometimes used to support evasion allegations, it "cannot

be used by importers in lieu of actual documentation requested by CBP, as importers are required

to provide such actual documentation pertaining to specific merchandise when requested…." *Id.*

at n. 56.

      CBP also noted that GLoB's claimed manufacturer – Chem Fert – responded to CBP's

requests, and indicated that it does not produce xanthan gum but rather imports and repackages

it. *Id., see also* C.R. 50.  Because neither GLoB nor its Indian exporter provided sufficient

documentation to determine which entity actually produced and exported the xanthan gum from

the PRC, CBP found that GLoB "did not act to the best of { its } abilities, justifying the

application of adverse inferences under 19 U.S.C. § 1517(c)(3)." *Id.* at 11.  Accordingly, CBP

applied an adverse inference that the xanthan gum had been produced in China and not by the

claimed foreign manufacturers.  *Id.* at 18.

      e.  *Crude Chem*

      Crude Chem responded to CBP's request for information on September 13, 2019, and

submitted additional factual information on November 23, 2019.  P.R. 176; P.R. 218-225.  Crude

Chem conceded that the xanthan gum had not been produced in India, but also argued that the

merchandise would have been excluded from the order and thus no evasion occurred.  *Id.*

However, Crude Chem did not provide documentation as to which entity had produced and

exported the xanthan gum from the PRC, but rather relied on publicly available data from

"Import Genius" for the assertion that "Fufeng" both produced and exported the xanthan gum.

P.R. 218-219.

      CBP rejected Crude Chem's assertions, noting that the documentation only referred to the

"shipper" of the xanthan gum and "does not even make reference to 'manufacturer'; 'producer'; or 'exporter' of the merchandise associated with the shipments." C.R. 113 at 14, ECF No. 22-18 at pdf pg. 45. Thus, CBP explained, "{t}he conclusions about the identity of the Chinese exporter for the listed shipments merely rely on assumptions about the 'shipper' information referenced in the Import Genius information." *Id.* Moreover, Crude Chem's response to CBP's information request indicated that Chem Fert told Crude Chem that it imported the xanthan gum from a company named "Jianlong." *Id.* As CBP explained, while "no documentation supporting that claim {was} provided, this calls into further question any conclusion that a Fufeng entity was the manufacturer." *Id.* at 15-16; *see also* C.R. 87 at ¶ 3; ECF No. 22-15 at pdf pg. 75 (Statement of Miles Grendel to Police Inspector, Gujarat, India). CBP also noted that Crude Chem's claimed manufacturer – Chem Fert – responded to CBP's requests, and indicated that it does not produce xanthan gum but rather imports and repackages it. *See* C.R. 50.

Because neither Crude Chem nor its Indian exporter provided sufficient documentation to determine which entity actually produced and exported the xanthan gum from the PRC, CBP found that Crude Chem "did not act to the best of {its} abilities, justifying the application of adverse inferences under 19 U.S.C. § 1517(c)(3)." *Id.* at 16. Accordingly, CBP applied an adverse inference that the xanthan gum had been produced in China and not by the claimed foreign manufacturers. *Id*. at 18.

## LEGAL STANDARD

### I.   The Enforce And Protect Act

In 2016, the President signed into law The Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA), Pub. L. No. 114-125, 130 Stat. 122 (2016). Title IV, Section 421 of TFTEA, commonly referred to as the "Enforce and Protect Act" or "EAPA," established a new CBP

administrative procedure for investigating allegations of evasion of antidumping and

countervailing duty (AD/CVD) orders as part of the agency's efforts to ensure a level playing

field for domestic industries. *See generally* https://www.cbp.gov/sites/default/files/assets/

documents/2016Oct/Trade%20Facilitation%20and%20Trade%20Enforcement%20Act%20of%2

02015%20-%20Overview.pdf.

 Under EAPA, Federal agencies or interested parties—including U.S. and foreign

manufacturers, producers, exporters; certified unions or recognized unions or groups of workers;

and trade or business associations in a particular industry—may submit allegations to CBP that

reasonably suggest that merchandise covered by an AD/CVD order has entered the United States

through evasion. Generally, the investigation of an EAPA allegation proceeds as follows:

Within 15 calendar days of receiving an allegation, if CBP determines that the allegation

reasonably suggests covered merchandise has been entered through evasion, CBP must initiate

an investigation, 19 U.S.C. § 1517(b)(1), and within 90 calendar days, CBP must make an initial

determination of whether there is reasonable suspicion of evasion and, if so, issue interim

measures, which includes the suspension and extension of certain entries, 19 U.S.C. § 1517(e).

The EAPA statute grants CBP broad discretion to determine the scope and means of the

investigation, including authority to collect and verify any information it deems necessary to

make its evasion determination. 19 U.S.C. § 1517(c)(2). CBP's regulations set forth the types of

and requirements for the submission of factual information by parties. 19 C.F.R. § 165.23. For

example, parties to the investigation may voluntarily submit information to CBP or may provide

information in response to requests by CBP. *Id.* Parties to the investigation have 200 days from

the date of the initiation of the investigation to submit factual information on the record, and 230

calendar days to submit written arguments. *Id.* Parties to the investigation have 15-calendar

days to submit responses to other parties' written arguments.  *Id.*  Interested parties who are not

parties to the investigation may also provide information in response to requests by CBP.  *Id.*

During the investigation, CBP maintains an administrative record of material obtained

and considered by CBP during the investigation, as well as record information submitted by

interested parties.  19 U.S.C. § 1517(c)(2); 19 C.F.R. § 165.21.  No later than 300 calendar days

after the initiation of the investigation, CBP is required to make a determination as to whether

substantial evidence exists based on the administrative record to conclude that AD/CVD duties

have been evaded.[4]  19 U.S.C. § 1517(c)(1)(A); 19 C.F.R. § 165.22.  Interested parties are

permitted to request an administrative review of the initial determination, and CBP must

complete the review and issue a final administrative determination no later than 60 days after

such a request.  19 U.S.C. § 1517(f).  EAPA allows for judicial review in this Court of CBP's

final administrative determination and the original determination as to evasion, provided the

matter is initiated within "30 business days" after CBP completes a review.  19 U.S.C.

§  1517(g)(1).

## II.      <u>**Standard Of Review – Evasion Determinations**</u>

In reviewing CBP's evasion determinations, this Court determines whether CBP

complied with procedures under the EAPA statute and whether any determination, finding, or

conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law.  19 U.S.C. § 1517(g)(2).

"Courts look for a reasoned analysis or explanation for an agency's decision as a way to

determine whether a particular decision is arbitrary, capricious, or an abuse of discretion."

---

4 CBP may issue notice of an extension of time of 60 days, provided certain requirements are
met, to render its determination.  19 U.S.C. § 1517(c)(1)(B).

*Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).  "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors."  *WelCom Prods., Inc. v. United States*, 865 F. Supp. 2d 1340, 1344 (Ct. Int'l Trade 2012) (citing *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).  "An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently."  *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001).

When reviewing CBP's determinations, "absent constitutional constraints or extremely compelling circumstances," this Court "will defer to the judgment of an agency regarding the development of the agency record."  *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012) (explaining the Court's role in reviewing Commerce's antidumping duty administrative determinations).  "To do otherwise would 'run the risk of propelling the courts into the domain which Congress has set aside exclusively for the administrative agency.'"  *Id.* (quoting *FPC v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976)).  Rather, "{t}he role of judicial review is limited to determining whether the record is adequate to support the administrative action."  *PSC*, 688 F.3d at 761; *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012) (reversing order instructing Commerce to consider extra-record information because "the trial court's order usurps agency power, undermines Commerce's ability to administer the statute entrusted to it, contradicts important principles of finality, and discourages compliance").

## III.   Standard Of Review – Subject Matter Jurisdiction

The Court's determination of subject matter jurisdiction is a threshold inquiry.  *Steel Co.*

*v. Citizens For A Better Env't*, 523 U.S. 83, 94–95 (1998).  "It is fundamental that the existence of a jurisdictional predicate is a threshold inquiry in which plaintiff bears the burden of proof." *CR Indus. v. United States*, 10 CIT 561, 562 (1986).  When jurisdiction is challenged pursuant to Rule 12(b)(1), a plaintiff has the burden of establishing the basis for jurisdiction.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *see also Wally Packaging, Inc. v. United States*, 578 F. Supp. 1408, 1410 (Ct. Int'l Trade 1984) (noting that "{w}hen the Court's jurisdiction is challenged, the party asserting jurisdiction has the burden of establishing that jurisdiction exists").

Furthermore, "{i}t is elementary that {t}he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal quotations and citations omitted).  A waiver of sovereign immunity must be unequivocally expressed, not merely implied.  *Id.*  As the United States Supreme Court stated in *Ruckelshaus v. Sierra Club*:

> Waivers of immunity must be "construed strictly in favor of the sovereign," *McMahon v. United States*, 342 U.S. 25, 27, 72 S. Ct. 17, 19, 96 L. Ed. 268 (1951), and not "enlarge{d} . . . beyond what the language requires." *Eastern Transp. Co. v. United States*, 272 U.S. 675, 686, 47 S. Ct. 289, 291, 71 L. Ed. 472 (1927).

463 U.S. 680, 685 (1993).

The precise expression of consent to suit are the jurisdictional statutes enacted by Congress which authorize suit against the United States only under certain conditions.  In customs and trade litigation, subject matter jurisdiction in actions against the United States is conferred upon this Court by 28 U.S.C. § 1581.  Thus, although the United States has consented to be sued in this Court, such suits may only be permitted if the conditions of that statute are met.

**Argument**

I.    **This Court Lacks Subject Matter Jurisdiction Over Dr. Bronner's Complaint Because Its Entries Have Been Liquidated And Dr. Bronner's Did Not Timely Appeal (Dr. Bronner's)[5]**

As an initial matter, this Court does not possess subject matter jurisdiction over one plaintiff's - Dr. Bronner's - claims.  RCIT 12(b)(1).  Dr. Bronner's contests the May 2019 liquidation of its entries asserting in its brief that "CBP notified DBMS that it would suspend the liquidation for any entry that has entered on or after May 7, 2019, the date of the initiation of this Investigation … However, … CBP proceeded to liquidate and/or reliquidate the Subject Entries at the China-wide rate."  ECF No. 26 at 21.  The statute provides a remedy for this an alleged error:  commencing an action before CBP to protest "any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation."  19 U.S.C. § 1514(a).  The action must be commenced within 180 days of the date of liquidation.  19 U.S.C. § 1514(c)(3).  Upon receiving a timely-filed protest, CBP will make a determination whether to sustain or deny the protest; this determination is "final and conclusive upon all persons (including the United States and any officer thereof) unless a civil action … is commenced in the United States Court of International Trade."  19 U.S.C. § 1514(b).  An appeal of CBP's determination in a protest must be made within 180 days of the denial of that protest.  28 U.S.C. § 2636(a).  The statute provides that this Court "shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."  28 U.S.C. § 1581(a).

---

[5] Because this matter concerns five consolidated plaintiffs, defendant will indicate which plaintiff or plaintiffs a particular argument responds to.

Here, Dr. Bronner's protested the liquidation of its entries, and CBP denied its protests on April 9 and 21, 2020.  Ex. A, French Dec. at ¶¶ 7-8.  While Dr. Bronner's commenced this action within 180 days of the denial of its protests, its complaint does not indicate that it seeks to appeal the denial of these protests and –importantly – invokes this Court's jurisdiction under § 1581 (c), not (a).  *See* ECF No. 2 at ¶¶ 4-5.  Indeed, even outside its invocation of the improper jurisdictional provision, Dr. Bronner's complaint cannot be construed as pleading an appeal of the protest denial; in fact, the complaint does not *even mention* the protests.  *See, generally*, ECF No. 2.  Dr. Bronner's has thus failed to appeal CBP's denial of its protests.

Because CBP's denial of the protests is "final and conclusive" and Dr. Bronner's failed to timely appeal that denial to this Court, no remedy remains for Dr. Bronner's.  As the United States Court of Appeals for the Federal Circuit has held, even where it is uncontested that liquidation was erroneous[6], failure to timely seek relief in this Court is fatal to a plaintiff's claim. *United States v. Am. Home Assur. Co*., 789 F.3d 1313, 1323 (Fed. Cir. 2015) ("even though it is undisputed that Customs' 2005 reliquidations were erroneous, AHAC's failure to challenge those reliquidations in the Court of International Trade resulted in those liquidations becoming final and conclusive."); *see also Mitsubishi Elecs. Am. v. United States,* 865 F. Supp. 877, 879 (Ct. Int'l Trade 1994); *Omni U.S.A., Inc. v. United States*, 840 F.2d 912 (Fed. Cir. 1988).

Thus, even if the Court were to agree with Dr. Bronner's that CBP's evasion determination is not supported by substantial evidence (which, as set forth below, it is), there is no available remedy: the entries have long since been liquidated, and because Dr. Bronner's did not appeal the denial of its protest of that liquidation, CBP's determination is "final and

---

[6] Defendant does not concede that the liquidations were in error, but merely seeks to illustrate that, even if they were, this Court would not have subject matter jurisdiction to review the liquidation at this time.

conclusive." 19 U.S.C. §1514(b); *see, e.g.*, *Zenith Radio Corp. v. United States*, 710 F.2d 806

(Fed. Cir. 1983); *Carbon Activated Corp. v. United States*, 791 F.3d 1312, 1314 (Fed. Cir. 2015).

This Court does not possess subject matter jurisdiction over Dr. Bronner's claims, and they

should be dismissed.  RCIT 12(b)(1).

**II.    CBP Does Not Bear The Burden To Affirmatively Establish The Origin Of Imported Material; The Burden Rests With The Importer (Dr. Bronner's)**

Even if the Court possessed jurisdiction over Dr. Bronner's claims (it does not), those

claims should be rejected on the merits.  Dr. Bronner's central argument is that CBP's

determination is arbitrary and capricious because *CBP* "failed to demonstrate, by substantial

evidence, that at the time the subject entries were made they were covered merchandise within

the meaning of EAPA."  Dr. Bronner's Br. at 10, ECF no. 26 at 19.  Dr. Bronner's attempts to

impermissibly shift its burden by placing the onus on CBP to *affirmatively establish* that the

shipments (which it concedes did not, in fact, originate in India) were "subject merchandise."

This tortured reading of the statute fails.

As an initial matter, the statute provides a definition of "covered merchandise," to include

merchandise subject to both "an antidumping duty order" issued under 19 U.S.C. § 1673e or "a

countervailing duty order" issued under 19 U.S.C. § 1671e.  19 U.S.C. § 1517(a)(3).  Here, the

antidumping duty order– issued under 19 U.S.C. § 1673e – covers "dry xanthan gum, whether or

not coated or blended with other products, from China.  *See*, Order, 78 FR 43143.

Dr. Bronner's argues, however, that its xanthan gum came from an entity excluded from

that order and, as a result, CBP's failure to *affirmatively establish* the actual origin of the xanthan

gum renders its determination unsupported by substantial evidence.  But this Court, as well as

the United States Court of Appeals for the Federal Circuit, has routinely held that the burden to

establish entitlement to a reduced duty is born by the *respondent*, not the Government.  *See*

*Allied Tube & Conduit Corp. v. United States*, 132 F.Supp.2d 1087, 1094 (Ct. Int'l Trade 2001) ("As with all favorable adjustments to normal value or export price, respondent bears the burden of establishing both prongs of the test, and therefore, its entitlement to a duty drawback adjustment."); *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1040 (Fed. Cir. 1996) ("By failing to provide the detailed information and analysis necessary to establish entitlement to such an adjustment, {respondent} has failed to carry its burden of proof."); *Primary Steel, Inc. v. United States*, 834 F. Supp. 1374, 1383 (Ct. Int'l Trade 1993) ("The burden of creating a record from which the ITA could determine whether {respondent} was entitled to a duty drawback adjustment rested with {respondent}, not Commerce."). And this Court has long held so for good reason: shifting the burden to the Government to affirmatively prove the origin of material before assigning duties would both frustrate the statutory directive and incentivize respondents to withhold information.

Moreover, CBP's determination that evasion likely occurred is supported by substantial evidence. As an initial matter, exclusion from the order applies only to "Fufeng" merchandise that was *both produced and exported to the United States* by Fufeng.[7] As Commerce explained in its final results of the 2015-2016 administrative review, for "entries that were not reported in the U.S. sales databases submitted by {} Fufeng, Commerce will instruct CBP to liquidate such entries at the China-wide rate." P.D. 190 at 2; ECF No. 23-14 at PDF 164. Thus, even assuming *arguendo* that the documentation submitted by Dr. Bronner's was sufficient to establish that the xanthan gum was produced by "Fufeng", those shipments are still only excluded from the Order

---

[7] Defendant does not concede that, had Dr. Bronner's established that the xanthan gum was produced by an entity excluded from the order, CBP would have made a determination of no evasion. As litigation pursuant to this statute is relatively novel, defendant wishes to refrain from opining on how CBP would respond to particular hypothetical facts not at issue here.

if they were *also* reported in Fufeng's U.S. Sales database; otherwise the entries are subject to the China-wide rate.

And, Dr. Bronner's placed no information on the record about which entity had actually exported the xanthan gum at issue.  C.R. 113 at 8.  Indeed, Dr. Bronner's concedes that it still does not know which entity exported the xanthan gum from the PRC, claiming in its brief that the merchandise was "likely exported" by a Fufeng entity excepted from the Order.  Dr. Bronner's Br. at 12.

Moreover, CBP's determination that Dr. Bronner's failed to establish which entity actually produced the merchandise is supported by substantial evidence.  In support of its assertion that the xanthan gum was produced by an entity excluded from the order, Dr. Bronner's provided a [                              ] evidently created by its Indian exporter, [            ] and listing "Fufeng" in the name of the product.  C.R. 68 at 5; ECF No. 22-11 at PDF 560.  CBP rejected this, explaining that "{b}ased on the name near the logo, this would appear, if authentic, to be a document created by [            ] rather than any Fufeng entity, and therefore, does not demonstrate what party produced the merchandise that might have been represented by the information on that document."  C.R. 113 at 9.

Dr. Bronner's also submitted photographs, purporting to show cartons of xanthan gum bearing the legend "Produced by Fufeng."  C.R. 95, 96; ECF No. 22-16 at 217-20.  CBP explained the photos alone were not sufficient evidence of the xanthan gum's producer and that – even if such photos were acceptable evidence – they would nevertheless apply to only one of three shipments at issue.  C.R. 113 at 10.  Moreover, CBP pointed out that, if the shipments were so clearly marked, as in the purported photographs (with "Country of Origin: China" explicitly written), then Dr. Bronner's had either failed to notice the markings when it identified India as

the country of origin at the time of entry, or elected not to inform CBP of the information until

the evasion investigation was underway.  C.R. 95-96; C.R. 113 at 10.  Finally, CBP explained

that the photographs were further called into question because they indicated that the crates were

"Imported & Marketed by: [                              ]," an entity not otherwise mentioned or

discussed in Dr. Bronner's responses.  *See*, C.R. 95-96; C.R. 113 at 10-11 ("Finally, the label on

the carton in those photos states                                                ], and neither

DBMS nor [            ] appear to have identified that entity as the supplier of [          ] or to

have otherwise referenced that specific entity in their CF28 or RFI responses.")

        CBP also referred to an email submitted by Dr. Bronner's from [            ] – predating

the evasion investigation – in which [            ] writes, "{w}e have not purchased the material

directly from the Manufacturer 'Shandong Fufeng Fermentation Co., Ltd China,' since our Order

Quantity volumes required are very small and are not supported by the manufacturer."  C.R. 51,

ECF No. 22-8 at PDF 9.  As CBP explained, this further cast into doubt Dr. Bronner's assertion

that the xanthan gum had been produced by a "Fufeng" entity.  C.R. 113 at 8.  Finally, CBP

explained that the name "Fufeng" was by no means an indication that one of the entities

excluded from the Order had actually produced the merchandise, because "the name Fufeng on a

company document does not establish which exact company or companies are referenced, and

the record contains information indicating there are other Chinese entities than those in the

Fufeng Group whose names contains the word 'Fufeng.'"  *Id.* at 9.

        CBP did not "completely disregard{}" evidence placed on the record by Dr. Bronner's;

rather, it considered the evidence and determined that it was not sufficient to establish which

entities produced and exported the xanthan gum from the PRC.  Dr. Bronner's Br. at 12.  It is not

for CBP to establish where the xanthan gum imported by Dr. Bronner's originated – that burden

rests squarely with an importer.  CBP's evasion determination is supported by substantial
evidence.

Dr. Bronner's next argues that "CBP did not even attempt to verify the accuracy" of the
piecemeal evidence that it provided, "as allowed under 19 C.F.R. § 165.25(a)."  ECF No. 26 at
12.  Dr. Bronner's again misunderstands its burden; verification is not a system in which an
entity provides unsupported assertions as to the origin of its material and CBP conducts an
independent search to confirm or deny that information.  Rather, as this Court has held in the
context of AD/CVD verifications conducted by Commerce, verification is a process to confirm
information already received, not to discover new information.  *Hyundai Elec. & Energy Sys.
Co. v. United States*, 466 F. Supp. 3d 1303, 1317 (Ct. Int'l Trade 2020).  As Dr. Bronner's still
evidently does not know which entity exported the merchandise – not to mention the piecemeal
information that it *did* provide – it is unclear what CBP even could have verified.  CBP's
determination not to verify the scant evidence provided by Dr. Bronner's was not arbitrary or
capricious, nor an abuse of discretion.

Dr. Bronner's also asserts that "CBP acted capriciously and arbitrarily by failing adhere
to 19 CFR § 165.24(c)" which "deprived {Dr. Bronner's} of its right to procedural due process
by failing to provide it with the requisite notice *before* implementing either of the contested
decision above."  ECF No. 26 a 21-22 (emphasis in original).  As an initial matter, the regulation
does not provide for notice before interim measures are taken, but rather CBP to "issue
notification of this decision to the parties to the investigation within five business days *after*
taking interim measures."  19 C.F.R. 165.24(c) (emphasis added).  And here, CBP did provide
Dr. Bronner's the required notice – on August 12, 2019.  C.R. 40.  There is no requirement in

either the statute or regulations that parties be notified before interim measures are taken.  *See* 19. U.S.C. § 1517; 19 C.F.R. § 165.24.

It is not for CBP to affirmatively determine the origin of the entered merchandise – that burden rests on the importer.  Taken to its logical conclusion, Dr. Bronner's argument would permit importation of merchandise with no source documentation, and unless CBP affirmatively establishes where the merchandise was produced and exported, the merchandise would be subject to *no duties*.  Such a reading of the statute would frustrate CBP's statutory directive, not to mention incentivize importers not to fully document their shipments.  CBP's determination that evasion occurred is supported by substantial evidence.

## III.   CBP Cannot Conduct A Changed Circumstances Review (Remaining Plaintiffs)[8]

The remaining plaintiffs argue that, because "it is possible or even likely that CP Kelco is not subject to material injury by oilfield xanthan produced in China," CBP should have – somehow – undertaken a "changed circumstances" review to determine whether the Order should be retroactively altered to omit the Chinese xanthan gum imported by those plaintiffs. ECF Nos. 27, 28, 29 and 30 at 10.

As an initial matter, the Department of Commerce – not CBP – conducts changed circumstances reviews.  19 U.S.C. § 1675(b)(1) ("Reviews Based On Changed Circumstances….Whenever the *administering authority* or the Commission receives information …") (emphasis added); *see also* 19 U.S.C. § 1677(1) ("The term 'administering authority' means the Secretary of Commerce…"); *see also Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*, 31 C.I.T. 2040, 2042 (2007) ("Antidumping law grants Commerce the authority to

---

[8] Because the four plaintiffs other than Dr. Bronner's are represented by the same counsel and have advanced substantially similar arguments, they will be referred to herein as the "remaining plaintiffs" where arguments are advanced by all four.

revoke an antidumping order based on changed circumstances."). Thus, even if the remaining plaintiffs *were* interested parties making allegations sufficient to merit a changed circumstance review (which they are not), their argument nevertheless fails because they never presented their request to the agency with authority to consider it.[9]

Indeed, there is no doubt that the remaining plaintiffs were aware that Commerce, and not CBP, would be responsible for such a review, as their submissions asked CBP "to refer the matter to {Commerce} to make a changed circumstances determination." ECF Nos. 27, 28, 29, 30 at 7. Notwithstanding this understanding, the remaining plaintiffs seem to believe that simply stating in passing in administrative filings to CBP that it believes another agency should undertake a changed circumstances review is sufficient to initiate such a review. *See id.* at 10 ("CBP was notified of these facts five times but never moved on the information."). But that is not what the statute requires; rather, a review may be initiated only where Commerce "receives information" or "a request from an interested party." 19 U.S.C. § 1675(b)(1). Importantly, the remaining plaintiffs point to no legal authority for the proposition that one agency is *required* to share such allegations with another, particularly where a statutory process for the private party to bring the allegation directly to the agency concerned already exists.

Moreover, Commerce will only initiate a review where "changed circumstances sufficient to warrant a review exist." 19 U.S.C. 1675(b)(1)(C). Here, the allegations made in passing in the remaining plaintiffs' submissions to CBP are not the sort of circumstances that would typically merit such a review (though Commerce would need to make that determination

---

[9] Indeed, to the extent the Court construes these allegations to assert that Commerce improperly failed to initiate a changed circumstances review, the remaining plaintiffs have failed to exhaust their administrative remedies by never requesting that review in the first place. 28 U.S.C. § 2637.

based on a properly submitted request).  Specifically, the only evidence the remaining plaintiffs

rely on is a single email from CP Kelco indicating that they did not have any "Zanflo" Xanthan

gum in stock on June 6, 2018, and "due to a corporate strategy shift" could not anticipate when it

would have more available.  *See* P.R. 231, ECF No. 21-13 at 10.[10]  Importantly, absent from the

record is *any* evidence as to what type of xanthan gum "Zanflo" is or what the impact of CP

Kelco ceasing to produce it would have on the domestic market; this falls far short of the type of

allegation that is "sufficient to warrant a review." 19 U.S.C. 1675(b)(1)(C); s*ee, e.g. Trustees in*

*Bankr. of N. Am. Rubber Thread Co. v. United States*, 31 C.I.T. 2040, 2041 (2007) (initiating

changed circumstances review where "the sole manufacturer of the domestic like product {}

filed for bankruptcy and ceased operations."); *SKW Stickstoffwerke Piesteritz GmbH v. United*

*States*, 989 F. Supp. 253, 255 (Ct. Int'l Trade 1997) (undertaking changed circumstances review

to evaluate changes in market due to reunification of East and West Germany); *Sahaviriya Steel*

*Indus. Pub. Co. v. United States*, 33 C.I.T. 140, 143 (2009) (initiating changed circumstances

review after seventeen month period soliciting information as to whether a manufacturer

excluded from the applicable order had sold covered merchandise at less-than-fair value).

---

[10] The remaining plaintiffs, somewhat misleadingly, repeatedly assert that:

> CP Kelco stated on several occasions that it does not consistently supply the market in
> the United States with oilfield xanthan produced in the United States and it is possible or
> even likely that CP Kelco is not subject to material injury by oilfield xanthan produced in
> China from its corporate strategy shift.

*See,* ECF Nos. 27, 28, 20, 30 at 6, 10, 16.  To be clear, the emails submitted by the remaining
plaintiffs only indicate that CP Kelco was unable to supply the requested product and was unsure
when it would be able to again.  *See* P.R. 231, ECF No. 21-13 at 10.  The rest of this phrase –
that "it is possible or even likely that CP Kelco is not subject to material injury by oilfield
xanthan produced in China from its corporate strategy shift" – is the remaining plaintiffs'
characterization of the impact of this email, not a statement by CP Kelco that it believes the
Order should be revoked.

CBP does not have statutory authority to conduct a changed circumstances review, and is under no obligation to pass scant allegations along to Commerce, particularly when a regulatory process for requesting a review exists.

Moreover, the remaining plaintiffs presumably believe that, had Commerce undertaken a changed circumstances review, it would have determined that the entries were subject to a 0.0% dumping rate, and thus no evasion occurred. While the remaining plaintiffs advanced this argument during administrative proceedings, they have not reasserted it here. *See* ECF No. 27-30; *see also Hyundai Steel*, 483 F. Supp. 3d at 1277 ("arguments not raised in the opening brief are waived.") (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006)).

Whether or not a changed circumstances review should have occurred is thus of no moment because the remaining plaintiffs have waived their argument that CBP should have concluded that "Fufeng" was the manufacturer of the xanthan gum. And, as explained above, CBP's determination that the xanthan gum was likely produced in China is supported by substantial evidence, the least of which is the fact that the remaining plaintiffs' claimed manufacturer – Chem Fert – told CBP that it does not produce xanthan gum, but rather imports and repackages it. *See* C.R. 50. CBP's determination is supported by substantial evidence.

## IV.   CBP's Adverse Inference Is Supported By Substantial Evidence (All Plaintiffs)

Plaintiffs also contest CBP's determination to apply an inference that the xanthan gum was produced in China when they were unable to provide documentation establishing otherwise. ECF No. 26 at 18; ECF Nos. 27, 28, 29, 30 at 16. Statute provides that CBP may apply an adverse inference against a party that "has failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information…" 19 U.S.C. §1517(c)(3)(A).

Here, it is not contested that CBP requested information on the origin of the xanthan gum, and that the remaining plaintiffs were unable to provide it.

While there has been little case law under EAPA to date, general legal principles applicable to anti-dumping and countervailable duties (AD/CVD) should apply here, including that an importer is responsible for providing the requesting agency with documents in response to requests for information, and that critical documents – such as those establishing the origin of imported product – must be maintained in the ordinary course of business.  For example, in *Nippon Steel*, the United States Court of Appeals for the Federal Circuit explained that the "best of its ability" standard applicable to AD/CVD investigations and reviews "does not condone inattentiveness, carelessness, or inadequate record keeping."  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  The Court held that, rather, the "best of its ability" standard " assumes that importers are familiar with the rules and regulations that apply to the import activities undertaken and requires that importers… take reasonable steps to keep and maintain full and complete records documenting the information that a reasonable importer should anticipate being called upon to produce…"  The same is true here, where CBP requested the most basic of information from the remaining plaintiffs: documentation establishing the origin of xanthan gum imported into the United States.

Moreover, the inference that CBP made – that the xanthan gum was produced in China – is independently supported by the record.  Setting aside evidence from CP Kelco that India does not produce *any* xanthan gum, Chem Fert – the Indian "producer" identified by the remaining plaintiffs – told CBP that it is "not {a} manufacturer of Xanthan Gum in the sense we do not have{an} entire facility to manufacture the product … We import this product into India and then repack the same."  C.R. 50, ECF No. 22-8 at 5.  Moreover, Chem Fert indicated that the

xanthan gum had been imported from China and "as a matter of fact, {the remaining plaintiffs} had approached us and had asked us to import this product from China and thereafter repack it into India and export it to {the} United States." *Id.* at 6.  Similarly, Dr. Bronner's submitted photographs which it claimed to be from the relevant entries, showing cartons clearly marked "Country of Origin: China."  C.R. 95.  CBP thus did not apply an "inference" and resort to information outside the record (as with "facts otherwise available" in an AD/CVD matter). Rather – receiving no information to the contrary from the remaining plaintiffs – CBP deemed the xanthan gum to have been produced in China based on information from the claimed "producer" as well as information in the petition.

It is not contested that CBP requested – and plaintiffs could not provide –documentation establishing where and by whom the xanthan gum was produced; CBP's determination to apply an adverse inference is thus supported by substantial evidence.  *See* C.R. 113 at 6 (Ascension); 13 (UMD); 16 (Crude Chem); 18 (GLoB); 11 (Dr. Bronner's).

Finally, the remaining plaintiffs repeatedly assert that CBP's determination is not supported by substantial evidence because they "notified CBP five times that the parties had launched legal action in India to obtain documentation pertaining to the true manufacturer and exporter of the merchandise."  ECF Nos. 27, 28, 29, 30 at 15.  Absent from their argument is an explanation of what exactly the remaining plaintiffs believe CBP should have done with this information, or what the impact of the legal actions might have been.  *Id.*  As noted above, the Indian "manufacturer" responded to CBP's requests for information, and indicated that it did not produce the xanthan gum, but rather imported it from China.  C.R. 50.  Moreover, to the extent the remaining plaintiffs seek to assert that CBP should have permitted these legal proceedings to conclude before reaching its final determination, they cite no legal authority for the proposition

that proceedings should be extended if a party must take legal action to obtain documents that it should have already possessed: those establishing where and by whom the xanthan gum was produced.  Indeed, the statute would not permit such a pause, requiring CBP to issue a final determination "not later than 300 calendar days after the date on which the Commissioner initiates an investigation."  19 U.S.C. §1517(c)(1)(A).

## V.   CBP's Determination Stands Even If Untimely (Dr. Bronner's)

Dr. Bronner's finally argues that CBP's final determination is unlawful[11] because it was issued seven days after the 300-day statutory deadline.  ECF No. 26 at 24.  However, statutory deadlines are directory, not mandatory, unless Congress imposes consequences for failing to meet the deadline.  *See, e.g., Hitachi Home Elecs., Inc. v. United States*, 661 F.3d 1343, 1345-46 (Fed. Cir. 2011) ("if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction.") (citation and quotation omitted); *Gilda Indus., Inc. v. United States*, 622 F.3d 1358, 1365 (Fed. Cir. 2010) ("{A}bsence of a consequence {in the statute} indicates…that {the relevant subsection} is a directory provision and not 'mandatory.'").

Here, 19 U.S.C. § 1517 provides for a 300-day timeline, but includes no "consequence" for CBP failing to meet that deadline.  *Gilda Indus.*, 622 F.3d at 1365.  Moreover, Dr. Bronner's points to no other source of regulatory or legal support for its apparent assertion that CBP's determination should be disregarded.   CBP's seven day delay in publishing its determination is of no moment with regard to whether that determination is lawful.

---

[11] Dr. Bronner's brief does not specify what the result of CBP's missing the deadline should be, merely asserting that its determination was made "in violation of the clear deadline."  ECF No. 26 at 25.

## Conclusion

For these reasons, we respectfully request that the Court deny plaintiffs' motions, and sustain CBP's evasion determination.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

OF COUNSEL:                             /s/ Kelly A. Krystyniak
COREY CELT                              KELLY A. KRYSTYNIAK
Attorney                                Trial Attorney
U.S. Customs and Border Protection      Department of Justice
Office of the Chief Counsel             Civil Division
                                        Commercial Litigation Branch
                                        P.O. Box 480
                                        Ben Franklin Station
                                        Washington D.C. 20044
                                        Tel: (202) 307-1063
                                        Email: kelly.a.krystyniak@usdoj.gov

August 2, 2021                          *Attorneys for Defendant United States*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this brief complies with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which the brief was prepared, the public version of the brief contains a total of 8,711 words.

s/ Kelly A. Krystyniak

August 2, 2021