# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| ALL ONE GOD FAITH, INC., D/B/A DR. BRONNER'S MAGIC SOAPS, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES, *et al.,*<br><br>Defendants | Consolidated Court No.: 20-00164 |

**PLAINTIFF ALL ONE GOD FAITH, INC.'S RESPONSES TO COURT'S QUESTIONS FOR ORAL ARGUMENT ISSUED FEBRUARY 2, 2022**

Respectfully submitted,

/s/ Robert W. Snyder
ROBERT W. SNYDER
LAURA A. MOYA
Law Offices of Robert W. Snyder
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail(s): rsnyder@rwsnyderlaw.com
          lmoya@rwsnyderlaw.com

*Counsel for Plaintiff* All One God Faith, Inc., d/b/a Dr. Bronner's Magic Soaps

Dated: **February 11, 2022**

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| ALL ONE GOD FAITH, INC., D/B/A DR. BRONNER'S MAGIC SOAPS, *et al.,*<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>UNITED STATES, *et al.,*<br><br>　　　　　　Defendants | Consolidated Court No.: 20-00164 |

**PLAINTIFF ALL ONE GOD FAITH, INC.'S RESPONSES TO
COURT'S QUESTIONS FOR ORAL ARGUMENT ISSUED FEBRUARY 2, 2022**

On behalf of Plaintiff All One God Faith, Inc., d/b/a Dr. Bronner's Magic Soaps (hereinafter, "DBMS" or "Dr. Bronner's," we hereby respectfully submit the below written responses to the Court's questions issued on February 2, 2022, in preparation for the oral argument scheduled for February 15, 2022, in this consolidated matter.

**I.    Questions to All Questions to Plaintiffs All One God Faith, Inc. (d/b/a Dr. Bronner's Magic Soaps) ("DBMS"), Ascension Chemicals LLC, GLoB Energy Corporation, UMD Solutions LLC, and Crude Chem Technology LLC, (collectively, "Plaintiffs")**

1. **Is it your position that importers should not, in the context of Enforce and Protect Act ("EAPA") investigations, bear the burden of both producing relevant documentation in response to requests for information, and maintaining critical business documents ("such as those establishing the origin of imported product[s]")? See Def.'s Partial Mot. to Dismiss and Resp. to Pls' Mots. for J. Upon the Agency R. at 27, Aug. 2, 2021, ECF No. 40 ("Def.'s MtD").**

    **Response:** Plaintiff DBMS' position is that, in the general context of trade and customs matters, importers must produce relevant documentation in response to requests for information and maintain critical business documents, including those establishing the origin of imported products.  However, in the context of EAPA, this responsibility must be tailored to a party's

responses to U.S. Customs and Border Protection's (hereinafter, "CBP") requests for information and it must be evaluated under the "best of the party's ability" standard.

**2.      What cases and authorities best support your argument?**

**Response**: Under the EAPA statute, section 1517(c)(3) is the only section that addresses, and it does so incidentally, the importers' burden to produce documentation in response to requests for information received from CBP, as well as to maintain critical business documents, because this section also provides the consequence that importers may face if they fail to meet their burden—CBP may draw inferences adverse to their interests.  *See* 19 U.S.C. § 1517(c)(3). This section further provides that importers fail to meet this burden when they fail "to cooperate by not acting to the **best of [their] ability**." *Id.* (emphasis added).  The Government seems to agree with this reading of the statute, as it addressed the "best of its ability" standard in the section dedicated to rebutting DBMS' challenge to CBP's imposition of adverse inferences against it.  *See* Def.'s MtD at 27.  However, Defendant relies on *Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) to support its argument, which after a more careful and thorough reading supports DBMS' argument rather than the Government's.

Specifically, in *Nippon Steel*, the court found that an agency is permitted to "use an inference that is adverse to the interests of [a respondent] in selecting from among the facts otherwise available," only if the U.S. Department of Commerce (hereinafter, "Commerce") makes the separate determination that the respondent "has failed to cooperate by not acting to the best of its ability to comply." *Nippon Steel,* 337 F. 3d at 1381.  Importantly, the court clarified that the focus of this provision "is respondent's failure to cooperate to the best of its ability, not its failure to provide requested information. *Id.*  The EAPA statute does not provide an express definition of "the best of its ability;" nor do the decisions issued by the U.S. Court of

International Trade ("CIT") thus far in cases involving EAPA challenges (DBMS is aware of three (3) CIT opinions on the merits issued thus far, which are further addressed below, under Section I.3.). Accordingly, in order to understand the extent of importers' burden, we must look into guidance provided by the court in another setting where adverse inferences are available to government agencies—which was addressed in *Nippon Steel.*

The *Nippon Steel* court explained that "[t]he statutory mandate that a respondent act to "the best of its ability" requires the respondent to do the maximum it is able to do." *Nippon Steel*, 337 F.3d at 1382. Further, the *Nippon* Steel court clarified that, to conclude that an importer has not cooperated to the best of its ability and to draw an adverse inference, the agency must make two showings. First, the agency "must make an objective showing that a reasonable and responsible importer would have known that the requested information was required to be kept and maintained under the applicable statutes, rules, and regulations." *Id.* Second, the agency "must then make a subjective showing that the respondent under investigation not only has failed to promptly produce the requested information, but further that the failure to fully respond is the result of the respondent's lack of cooperation in either: (a) failing to keep and maintain all required records, or (b) failing to put forth its maximum efforts to investigate and obtain the requested information from its records." *Id.* Finally, the court noted that "[a]n adverse inference may not be drawn merely from a failure to respond, but only under circumstances in which it is reasonable" for the agency to "expect that more forthcoming responses should have been made; *i.e.,* under circumstances in which it is reasonable to conclude that less than full cooperation has been shown. *Nippon Steel*, 337 F.3d at 1382-1383. Here, even if the Court were to find that DBMS failed the objective test outlined above, which it did not, the Court cannot find that DBMS failed to meet the subjective test, because it immediately and

repeatedly reached out to its Indian Supplier, in an attempt to obtain the additional records it did not possess regarding the production of the xanthan gum, therefore putting forth its maximum efforts to investigate and obtain the information requested by Customs, as required by the Nippon Steel standard.

3. **Are there any recent or pending Federal Circuit or CIT cases that may affect the court's analysis?**

<u>Response</u>: Plaintiff DBMS is unaware of any pending cases before the CIT or the Federal Circuit that may affect the Court's analysis on this particular aspect. To DBMS' knowledge, the CIT has issued three (3) opinions on the merits in similar EAPA challenges filed before this Court, but none of these address the aspect discussed in this section. *See Royal Brush Mfg. v. United States*, 483 F. Supp. 3d 1294 (Ct. Int'l Trade 2020) (hereinafter, "*Royal Brush I*"), *Royal Brush Mfg. v. United States,* Court No. 19-00198, Slip Op. 2021-152 (Ct. Int'l Trade 2021) (hereinafter, "*Royal Brush II*"), and *Diamond Tools Tech. LLC v. United States*, Ct. No. 20-00060, Slip Op. 2021-151 (Ct. Int'l Trade 2021) (hereinafter, "*DTT*").

II. <u>**Questions to Plaintiff DBMS**</u>

1. **You argue that the determination by U.S. Customs and Border Protection ("CBP") that the box pictures were not "credible evidence" was arbitrary. Please explain why CBP's explanation of the conflicting evidence on the record (for example, the email assertions by [Sunatura] that it did not purchase the xanthan gum from [Fufeng], and the additional, unexplained notation on the boxes that the importer was [Anshul Life Sciences] rather than [Sunatura or Fufeng]) was not adequate basis to conclude the box pictures were not credible.** [1]

---

[1] For purposes of this submission, Plaintiff DBMS is treating the entity names referred in this question as public. However, for ease of references, Plaintiff DBMS will refer to Sunatura as the "Indian Supplier" and to Fufeng as the "Chinese Manufacturer."

**Response:** CBP's explanation was not adequate because, in reaching its decision, the agency only selected parts of the email communications between the Indian Supplier and DBMS wherein the Indian Supplier stated that it had not purchased the xanthan gum *directly* from the Chinese Manufacturer, leaving out statements made by the Indian Supplier also explaining that the xanthan gum was produced by the Chinese Manufacturer. *See, e.g.,* Confid. Admin. Rec., Oct. 16, 2020, ECF No. 22-13 at 136 (wherein the Indian Supplier advised DBMS that the xanthan gum was manufactured by "Shandong Fufeng Fermentation Co., Ltd." (hereinafter, "Fufeng")); *see also id.* at 130 (further clarifying that the xanthan gum was manufactured by "Shandong Fufeng Fermentation Co., Ltd.," despite not having been purchased directly from the Chinese Manufacturer by DBMS' Indian Supplier). Under EAPA, CBP must reach a positive determination of evasion based on substantial evidence. *See* 19 U.S.C. § 1517(c)(1)(A). In determining the existence of substantial evidence, "the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence," must be considered. *Atlantic Sugar, Ltd. v. United States*, 744 F.2d,1556, 1562 (Fed. Cir. 1984); *see also Siemens Energy, Inc. v. United States*, 806 F.3d 1367, 1369 (Fed. Cir. 2015) ("Support by substantial evidence is determined on the entirety of the record, taking into account the evidence that supports and the evidence that detracts from the agency's conclusion."). "This includes 'contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Huzhou Muyun Wood Co. v. United States*, 324 F. Supp. 3d 1364, 1373 (Ct. Int'l Trade 2018) (quoting *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994)). Because CBP's explanation only considered and addressed the part of the evidence that supported a specific finding of evasion, as opposed to all their implications, the agency's reasoning was not adequate.

**2.** **Is it your position that any contradiction among the evidence on the record must be resolved in favor of an importer?  If not, please explain your conclusion that "the only reasonable inference" which could be drawn from the contradictory evidence on the record was that "[Fufeng] was not only the manufacturer of the Subject Merchandise, but also the Chinese exporter that supplied the Indian Supplier."  Pl. All One God Faith, Inc.'s Mot. for J. on the Agency R. at 23, Feb. 16, 2021, ECF No. 26 ("DBMS's MJAR").**

**Response:** The Federal Circuit has held that the substantiality of the evidence supporting agency determination cannot be made "merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn." *Suramerica*, 44 F.3d at 985 (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Instead, the court said, "the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id.* (citations omitted).  Because DBMS is a respondent in this matter, under the substantial evidence standard the contradictory evidence (or the evidence from which conflicting inferences may be drawn) must be resolved in favor of the importer when it is sufficient to detract from the weight of the evidence against it.  As to DBMS' assertion cited by the Court in the question above, it was made in the context of CBP's assessment of adverse inferences against DBMS under 19 U.S.C. § 1517(c)(3).  As explained above, under Section I. 1., what prompts the application of adverse inferences is the "respondent's failure to cooperate to the best of its ability, **not its failure to provide requested information**. *Nippon Steel*, 337 F. 3d at 1381 (emphasis added). DBMS did cooperate to the best of its ability, because the importer promptly and fully responded to *all* requests for information received from CBP, before and during the EAPA investigation, it reached out to its Indian Supplier and requested, multiple times, that it be provided with accurate information regarding the manufacturer of its xanthan gum, and provided CBP with the information it received from its Indian Supplier without delay—information which, at a minimum, showed that Fufeng manufactured the xanthan gum at issue.  Therefore, under the

*Nippon Steel* standard, DBMS did cooperate to the best of its ability, as it did the maximum it could do.  *See Nippon Steel*, 337 F.3d at 1382.  Under these circumstances, CBP's adverse inferences against DBMS were not warranted, and its determination as to evasion should have been issued after giving due weight to all the evidence before it, without assessment of adverse inferences, which under the substantial evidence standard would have supported the conclusion that Fufeng produced the xanthan gum imported by DBMS under the entries subject to the underlying EAPA investigation.

3. **Was any explanation offered to CBP as to why the alleged xanthan gum imports photographed by DBMS were identified upon entry as Indian-origin xanthan gum shipments manufactured by [Sunatura] despite being labeled "Produced by [Fufeng]" and "Country of Origin: China"?**

   **Response**: Yes.  On April 2, 2019, in response to a proposed Notice of Action issued by CBP on March 13, 2019, and thus before the EAPA investigation was even commenced, DBMS explained to CBP that, with the exception of one shipment, which entered the U.S. commerce on November 27, 2018, DBMS' xanthan gum shipments from the Indian Supplier went directly to DBMS' third-party manufacturer of the end product for which DBMS used the imported xanthan gum.  *See* Confid. Admin. Rec., Oct. 16, 2020, ECF No. 22-16 at 206-207.  Therefore, at the time when DBMS made the entries subject to this action (that is, May 21, 2018, July 31, 2018, and November 27, 2018, respectively), DBMS could not have relied on the markings discovered on the boxes stored at its own warehouse, because the discovery of these marking did not happen until February of 2019, when DBMS was first contacted by CBP with a Request for Information affecting these entries of xanthan gum.

/ / /

4.  You state that "CBP could have used an adverse inference against the interests of the Indian Supplier due to its lack of cooperation," but not against the interests of DBMS.  DBMS's MJAR at 20.  To what extent should an importer be responsible for accurate recordkeeping and reporting regarding the origins of its supplier-sourced ingredients?

    <u>Response</u>: Plaintiff DBMS believes that the answer to this question was provided under Section I.2., because under the EAPA statute the importer's responsibility to maintain and report accurate records regarding the origins of its supplier-sourced ingredients is evaluated under the adverse inferences provision, and thus under the "best of its ability" standard, as explained in *Nippon Steel*.  This is because, under the EAPA statute, the extent of an importer's recordkeeping and reporting duties appears to be immaterial for purposes of making an "evasion" determination, as that term is defined therein.  See 19 U.S.C. § 1517(a)(5)(A) and 19 C.F.R. § 165.1.

5.  Why would the [Fufeng] exclusion, which explicitly did not extend to "entries that were not reported in the U.S. sales databases," apply to xanthan gum imported through India? <u>Xanthan Gum from the People's Republic of China: Final Results of the Antidumping Duty Administrative Review and Final Determination of No Shipments; 2015–2016,</u> 83 Fed. Reg. 6,513, 6,514 (Dep't Commerce Feb. 14, 2018) ("<u>AD Determination</u>").

    <u>Response</u>: Commerce's limitation of the Fufeng exclusion to "entries that were not reported in the U.S. sales databases" refers only to those entries that were "submitted by . . . Fufeng."  *AD Determination* at 6,514.  This interpretation is supported by Commerce's non-market economy policy, wherein the agency explained that the non-market economy rate will apply with respect to entries that had been suspended "at a **reviewed** exporter's rate," but which were not reported to or reviewed by Commerce during the administrative review proceed.  *See Non-Market Economy Antidumping Proceedings: Assessment of Antidumping Duties*, 76 Fed. Reg. 65,694 (hereinafter, "Non-Market Economy Policy"); *see also id.* at 65,695 (further stating

that Commerce's refined Non-Market Economy Policy will not apply to entries "suspended at the cash deposit rates for exporters for which a review is not initiated."). In other words, CBP's Non-Market Economy Policy applies only to Chinese exporters. Here, because Sunatura was a non-reviewed, non-Chinese exporter, it is the Cash Deposit Requirements contained in the AD Determination that apply, which state that "for all non-Chinese exporters of subject merchandise which have not received their own rate, the cash deposit rate will be the rate applicable to the Chinese exporter(s) that supplied the non-Chinese exporter."

6. **How do you respond to the argument made by Defendant the United States ("the Government") that requiring CBP to prove that the xanthan gum at issue did not originate with [Fufeng] would incentivize importers to withhold information?**

**Response:** The Government's argument that requiring CBP to prove that the xanthan gum at issue herein did not originate with the Chinese Manufacturer would incentivize importers to withhold information is both speculative and misplaced. First, the Government's argument is speculative as it provided *no* authority to support it. *See* Def.'s MtD at 19. Further, the Government misconstrues CBP's burden under EAPA, as it is not to affirmatively prove the allegation of evasion, but to make a finding, whether in the affirmative or in the negative, based on the record established on a case-by-case basis, as to such allegation. In that context, the Government's burden is to investigate the allegation it received and make a determination based on substantial evidence, while DBMS' burden is to cooperate with CBP, to the best of its ability, in order to help CBP reach its determination, which DBMS did in this case. The Government twisted DBMS' argument by stating that CBP would be required to affirmatively prove that the xanthan gum did *not* originate with Fufeng in order to reach its determination under EAPA; this would be true only to the extent that CBP must always make a positive determination under EAPA, but that is not the case. CBP's investigations under EAPA do not have to end with a

positive determination of evasion if the importer-specific record before it does not support it—and with respect to Plaintiff DBMS it did not.

7. **Why was the notice requirement not met through compliance with 19 C.F.R. 165.24(c)?**

**Response:** CBP's notice of interim measures provided pursuant to 19 C.F.R. § 165.24(c) with respect to DBMS' entries subject to the EAPA investigation was defective. CBP informed DBMS that it had imposed interim measures against it on August 12, 2019. At that time, the status of DBMS' entries was as follows: one (1) of the entries had been liquidated as of April 19, 2019, while the remaining two (2) were under "suspended" status since February 13, 2019. Through its August 12, 2019, notice of interim measures, CBP informed DBMS that, with respect to unliquidated entries that entered before the date of initiation of the EAPA investigation, which was the case for the two (2) DBMS entries suspended as of February 13, 2019, it will "extend the period for liquidation" for such unliquidated entries. *See* Confid. Admin. Rec., Oct. 16, 2020, ECF No. 22-6 at 27. As stated, in direct disregard of its August 12, 2019, notice of interim measures, on September 27, 2019, CBP proceeded to *liquidate* the two (2) DBMS entries that had been suspended, rather than maintain their suspended status. Accordingly, CBP's notice requirement could not have been met through compliance with 19 C.F.R. § 165.24(c), because CBP's liquidations of its two (2) suspended entries occurred after such notice was communicated to DBMS on August 12, 2019.

8. **What consequence follows from CBP's alleged non-compliance with the procedural requirements of 19 U.S.C. § 1517(c)(1)(A)?**

**Response:** The EAPA statute, 19 U.S.C. § 1517(c)(1)(A), does not specify the consequence for CBP's non-compliance with the procedural requirement set forth therein,

namely to make its EAPA determination "no later than 300 calendar days" after the date of the initiation of its investigation.  However, when providing the standard applicable on judicial review to CBP's EAPA investigation, EAPA provides that the Court shall examine "whether [CBP] *fully* complied with all procedures" when conducting its EAPA investigations.  19 U.S.C. § 1517(g)(2)(A) (emphasis added).  Further, the EAPA statute provides CBP with the authority to extend the 300 days by "not more than 60 calendar days," if it decides that more time is needed to reach its EAPA determination, which CBP did not take advantage of in this case.  Finally, throughout its EAPA investigation, CBP officials repeatedly cited the fact that time constraints did not allow it to provide the parties with more time to respond to its requests, when such time was requested by the parties.  Accordingly, DBMS believes that the 300 calendar days deadline is mandatory, as opposed to directory, and non-compliance with it should invalidate CBP's determination of evasion.

          Respectfully submitted,

          /s/ Robert W. Snyder
          ROBERT W. SNYDER
          LAURA A. MOYA
          Law Offices of Robert W. Snyder
          6 Morgan, Suite 114
          Irvine, CA 92618
          Telephone: (949) 453-8688
          E-mail(s): rsnyder@rwsnyderlaw.com
                        lmoya@rwsnyderlaw.com

          *Counsel for Plaintiff* All One God Faith, Inc., d/b/a Dr. Bronner's Magic Soaps

Dated: **February 11, 2022**

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| ALL ONE GOD FAITH, INC., D/B/A DR. BRONNER'S MAGIC SOAPS, *et al.,*<br><br>                Plaintiffs,<br><br>        v.<br><br>UNITED STATES, *et al.,*<br><br>                Defendants | Consolidated Court No.: 20-00164 |

## CERTIFICATE OF COMPLIANCE

I, Robert W. Snyder, attorney at the Law Offices of Robert W. Snyder, who is responsible for the foregoing response, relying upon the page and word count of Microsoft Word's page and word count features, as used for its preparation, certify that this response complies with the 15-page limit set by the Court in its Request for Questions for Oral Argument issued on February 2, 2022, ECF. No. 58, as well as Rule 2(B) of the U. S. Court of International Trade's Standard Chambers Procedures, as it contains 3,424 words.

                                                              Respectfully submitted,

                                                              /s/ Robert W. Snyder
                                                              ROBERT W. SNYDER
                                                              LAURA A. MOYA
                                                              Law Offices of Robert W. Snyder
                                                              6 Morgan, Suite 114
                                                               Irvine, CA 92618
                                                               Telephone: (949) 453-8688
                                                               E-mail(s): rsnyder@rwsnyderlaw.com
                                                                               lmoya@rwsnyderlaw.com

                                                              *Counsel for Plaintiff* All One God Faith,
                                                              Inc., d/b/a Dr. Bronner's Magic Soaps

Dated: **February 11, 2022**