<u>**UNITED STATES COURT OF INTERNATIONAL TRADE**</u>

<u>BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE</u>

| |
|---|
| ALL ONE GOD FAITH, INC., D/B/A<br>DR. BRONNER'S MAGIC SOAPS, *et al.*<br><br>              Plaintiff,<br><br>    v.<br><br>UNITED STATES, *et al.,*<br><br>              Defendant. |

**Consolidated Court No.:  20-00164**

<u>**ORDER**</u>

Upon consideration of Plaintiff's Motion for Leave to File a First Amended Complaint or, in the Alternative, to Supplement Its Complaint, and any responses thereto; and upon reading other papers and proceedings had herein; it is hereby

**ORDERED** that Plaintiff's Motion for Leave to File a First Amended Complaint or, in the Alternative, to Supplement Its Complaint, is GRANTED; and

**ORDERED** that Plaintiff's First Amended / Supplemental Complaint is deemed filed.

                                _____
                                       Gary S. Katzmann, Judge

Dated: _____
      New York, New York

|  |  |
|---|---|
| ALL ONE GOD FAITH, INC., D/B/A<br>DR. BRONNER'S MAGIC SOAPS, *et al.*,<br><br>                      Plaintiffs,<br><br>                 v.<br><br>UNITED STATES, *et al.*,<br><br>                   Defendants | **Consolidated Court No.: 20-00164** |

## PLAINTIFF ALL ONE GOD FAITH, INC.'S
## MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT OR,
## IN THE ALTERNATIVE, TO SUPPLEMENT ITS COMPLAINT

Pursuant to Rule 15(a) of the Rules of the U.S. Court of International Trade (hereinafter, "USCIT"), Plaintiff All One God Faith, Inc., d/b/a Dr. Bronner's Magic Soaps (hereinafter, "Dr. Bronner's" or "DBMS"), respectfully moves this Court to allow it to amend its complaint, originally filed against Defendant United States (hereinafter, "Defendant" and/or the "Government") on August 26, 2020 (hereinafter, "Original Complaint"); wherein Plaintiff challenged U.S. Customs and Border Protection's (hereinafter, "CBP" and/or "Customs") determinations as to evasion issued against it under the Enforce and Protect Act (hereinafter, "EAPA"), 19 U.S.C. § 1517(c) and (f), EAPA Consolidated Case Number 7281 (hereinafter, the "EAPA Investigation").

In the alternative, Plaintiff respectfully moves this Court to allow it to supplement its Original Complaint pursuant to USCIT Rule 15(d), which permits a party to serve a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." USCIT R. 15(d).

Plaintiff's proposed changes seek to explicitly contest Customs' denial of the protests it filed to contest Customs' erroneous liquidations of its entries of xanthan gum subject to the EAPA Investigation (hereinafter, "Subject Entries").  A proposed First Amended / Supplemental Complaint reflecting such proposed changes is attached to this motion as **EXHIBIT 1**.

Plaintiff's motion is made in the interests of justice, as contemplated under USCIT Rule 15(a)(2), which provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires."  USCIT R. 15(a)(2).  The court has described the USCIT Rule 15 standard as "equitable and lenient."  *Arlanxeo USA LLC v. United States*, 42 CIT __, __, 337 F. Supp. 3d 1350, 1356 (Ct. Int'l Trade 2018).  Further, this court's rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  USCIT R. 1.

In this respect, acknowledging that USCIT Rule 15(a)(2) is identical to Rule 15(a)(2) of the Federal Rules of Civil Procedure, the U.S. Court of Appeals for the Federal Circuit (hereinafter, the "Federal Circuit") has adopted the United States Supreme Court's view on the standard set out under Rule 15.  *See, e.g., Intrepid v. Pollock*, 907 F.2d 1125, 1128 (Fed. Cir. 1990) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Specifically, the Supreme Court has framed the balancing of interests envisioned by Rule 15 as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman,* 371 U.S. at 182.

The interests of justice would be best served by granting Plaintiff's motion for the following reasons. First, Plaintiff's proposed amendments are brought in good faith, in an attempt to clarify its claims further and bring them in alignment with its true intent at the inception of this case, which was to challenge before this Court CBP's determinations of evasion issued against it under the EAPA Investigation and all of their ramifications, including the unlawful and premature liquidations of its Subject Entries.

To further demonstrate this intent, prior to filing this action on August 26, 2020, Plaintiff DBMS took all the necessary and required steps to challenge Customs' unlawful liquidations of its Subject Entries: it timely protested these liquidations before Customs, paid in full the appropriate duties assessed against its Subject Entries, and proceeded with filing this action within the time prescribed for challenging Customs' denials of its protests before this Court. However, as basis for the Court's jurisdiction, Plaintiff DBMS only asserted the statute giving this Court jurisdiction over EAPA matters—28 U.S.C. § 1581(c). Plaintiff did so because, in light of EAPA's novelty and the lack of judicial guidance on this aspect, it interpreted such statute to be the broader grant of authority, encompassing aspects incidentally falling under other jurisdictional bases, in this case 28 U.S.C. § 1581(a), which allows for protest denials to be further challenged with this Court.

Accordingly, the proposed amendments seek to explicitly assert this Court's subject matter jurisdiction over this action under 28 U.S.C. § 1581(a)—the statute providing this Court with jurisdiction over denials of protests only—*in addition* to the original authority alleged by Plaintiff DBMS, 28 U.S.C. § 1581(c)—which provides this Court with jurisdiction over any CBP EAPA determinations.

Moreover, Plaintiff's proposed amendments will not cause *any* undue delay or prejudice for Defendant. "In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir.1994) (quoting *Tokio Marine & Fire Insurance Co. v. Employers Insurance of Wausau*, 786 F.2d 101, 103 (2d Cir.1986)).

In the instant case, the proposed amendments will not cause the Government to expend any additional resources, because they are mere technicalities that seek to respond to and cure alleged deficiencies outlined by the Government itself, as opposed to bringing any new arguments or claims to which Defendant might want, or need, to formally respond to. Neither will these proposed amendments affect Defendant's defenses against the EAPA Determinations in this case—to the contrary, it would allow the Court to fully adjudicate the action before it. In other words, Defendants' rights and opportunity to respond to the Plaintiff's proposed arguments will not be curtailed in any way should the Court grant Plaintiff's motion.

On the other hand, not permitting the proposed amendments outlined in **EXHIBIT 1** attached herewith might result in Plaintiff being barred from exercising its statutory right to judicial review of the EAPA determinations—a consequence much too harsh for a potential error that is nothing more than a mere technicality. As explained above, Plaintiff has otherwise complied with all the prerequisites and requirements to file a judicial challenge to CBP's denial of the protests it filed against CBP's erroneous liquidations of its Subject Entries.

Finally, while Plaintiff acknowledges that the motion herein could have been filed at an earlier stage, Plaintiff respectfully asks the Court to find that any delay in bringing the present

motion was not due to any dilatory motives.  Notably, the recent Oral Argument held by this

Court on February 15, 2022, has been instructive for Plaintiff with respect to the challenges

brought by Defendant regarding this Court's subject matter jurisdiction over Plaintiff's action.

Further, Plaintiff has actively and diligently pursued this litigation, by making timely filings and

minimizing its requests for extensions of time.  Thus, while it may have been inadvertent for

Plaintiff to not file its motion at an earlier stage in this litigation, Plaintiff has been diligently

pursuing this matter and has never displayed any dilatory intent.

In the alternative, Plaintiff respectfully requests this Court to construe its proposed

changes as supplementing its Original Complaint, pursuant to USCIT R. 15(d), which allows for

changes if they set out "any transaction, occurrence, or event that happened after the date of the

pleading to be supplemented."  USCIT R. 15(d).

Here, the Original Complaint was filed on August 26, 2020.  Defendant's Partial Motion

to Dismiss and Response to Plaintiffs' Motions for Judgment upon the Administrative Record,

ECF. No. 40, which challenges this Court's subject matter jurisdiction over Plaintiff's action,

was filed on August 2, 2021.  However, Customs' erroneous liquidations of Plaintiff's Subject

Entries did not become "final and conclusive," within the meaning of 19 U.S.C. § 1514(b), until

October 6, 2020, and October 18, 2020, respectively.

Since both aforementioned events took place after the inception of this action on August

26, 2020, Defendant's claims of finality did not exist at the time when the Original Complaint

was filed, but instead arose after such filing.  Further, the U.S. Court of Appeals for the Federal

Circuit has held that, "[w]here the supplemental pleading with respect to such later events relates

to the same cause of action originally pleaded," it would be "an abuse of discretion to deny the

amendment." *Intrepid*, 907 F.2d at 1128 (quoting *Griffin v. County School Board*, 377 U.S. 218 (1964)).

In sum, Plaintiff's proposed amendments are made in the interest of justice, as they will avoid the filing of duplicative litigation, which would only waste the parties' and this Court' resources, allow a prompt and efficient resolution of the entire controversy among the parties, particularly since the Court is already familiar with both the jurisdictional and the merits of this case, and impose no prejudice on Defendant.

On February 23, 2022, undersigned counsel for Plaintiff has reached out, via e-mail, to counsel for all parties to this consolidated action, advising of Plaintiff's intent to file the foregoing motion and asking for the parties' respective positions. On February 23, 2022, counsel for Defendant, Ms. Kelly Krystyniak, Esq., responded via e-mail and requested that Defendant be provided with Plaintiff's proposed amended complaint, as well as its draft motion. On February 24, 2022, undersigned counsel advised Defendant's counsel that Plaintiff was working on finalizing its intended submissions and would share them the next day, as soon as they were finalized. In the same e-mail reply, undersigned counsel provided Defendant's counsel with a detailed summary of its proposed amendments, to which Defendant's counsel did not respond. On February 25, 2022, undersigned counsel followed up with Defendant's counsel and provided the requested drafts. Defendant's counsel responded and requested that Defendant's position as to the foregoing motion be indicated as follows: "The United States received the draft motion and amended complaint after 3:00 on Friday, February 25, and has not yet had an opportunity to consult internally and take a position on the motion. We will inform the Court whether we intend to oppose the motion as soon as we are able."

WHEREFORE, Plaintiff respectfully requests that the Court grant its motion for leave to file a first amended complaint or, in the alternative, to supplement its complaint.

Respectfully submitted,

/s/ Robert W. Snyder
ROBERT W. SNYDER
LAURA A. MOYA
Law Offices of Robert W. Snyder
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail(s): rsnyder@rwsnyderlaw.com
lmoya@rwsnyderlaw.com

*Counsel for Plaintiff* ALL ONE GOD
FAITH, INC., D/B/A
DR. BRONNER'S MAGIC SOAPS

Dated: **February 25, 2022**

EXHIBIT 1

# UNITED STATES COURT OF INTERNATIONAL TRADE

<u>BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE</u>

| |
|---|
| ALL ONE GOD FAITH, INC., D/B/A<br>DR. BRONNER'S MAGIC SOAPS, *et al.*<br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES, *et al.,*<br><br>　　　　　　　　Defendant. |

**Consolidated Court No.: 20-00164**

## FIRST AMENDED / SUPPLEMENTAL COMPLAINT

Plaintiff All One God Faith, Inc., d/b/a Dr. Bronner's Magic Soaps (hereinafter,

"Plaintiff" and/or "DBMS" / "Dr. Bronner's"), by and through its counsel, alleges the following

for its Complaint against defendant United States (hereinafter, "Defendant" and/or the

"Government"), acting by and through U.S. Customs and Border Protection (hereinafter, "CBP"

and/or "Customs").

## CONTESTED DETERMINATION

1.　　　This action is an appeal from CBP's final affirmative determination of evasion, issued

under 19 U.S.C. § 1517(f), including its initial determination issued under 19 U.S.C. § 1517(c),

as associated with the Enforce and Protect Act (hereinafter, "EAPA") Consolidated Case

Number 7281 (hereinafter, "Investigation"), covering the allegation of evasion of the

antidumping duty order A-570-985 (hereinafter, the "Order") on xanthan gum from the People's

Republic of China (hereinafter, "PRC" and/or "China").

2.      Specifically, on March 9, 2020, CBP's Trade Remedy & Law Enforcement Directorate (hereinafter, "TRLED") issued its "Notice of Final Determination as to Evasion" (hereinafter, "Initial Determination"), and on July 16, 2020, its Office of Trade, Regulations & Rulings (hereinafter, "ORR") affirmed such determination on administrative review (hereinafter, "Review Determination") (collectively, the "EAPA Determinations").

3.      CBP's EAPA Determinations cover entries of xanthan gum made by Plaintiff from May 7, 2018, through the pendency of this Investigation (hereinafter, "Subject Entries").  In addition, Plaintiff is also contesting Customs' denial of the protests it filed to contest Customs' erroneous liquidations of its Subject Entries.

## JURISDICTION

4.      This action is brought pursuant to section 517(g) of the Tariff Act of 1930, as amended by the Trade Facilitation and Trade Enforcement Act of 2015 (hereinafter, the "TFTEA"), to contest CBP's Determinations.  *See* 19 U.S.C. § 1517(g).

5.      Accordingly, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1581(c), which provides the Court with exclusive jurisdiction over all civil actions commenced under 19 U.S.C. § 1517.  In addition, this Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a), as it challenges Customs' denial of Plaintiff's protests filed to contest Customs' erroneous liquidations of its Subject Entries.

## STANDING

6.      DBMS is a United States importer of merchandise subject to CBP's EAPA Investigation and an interested party within the meaning of 19 U.S.C. § 1517(a)(6) and 28 U.S.C. § 2631(k)(1).

7.      Further, following CBP's Determinations, antidumping duties (hereinafter, "ADD") have been assessed against Plaintiff's Subject Entries, therefore adversely affecting or aggrieving Plaintiff, within the meaning of section 702 of the Administrative Procedure Act, as amended, 5 U.S.C. § 702.

8.      Plaintiff has paid such ADD, as well as any other duties, charges, and exactions associated with its Subject Entries before filing this action, as per 28 U.S.C. § 2637(a).

9.      Therefore, Plaintiff is also entitled to commence this action pursuant to 28 U.S.C. § 2631(a) and (i).

## TIMELINESS

10.      CBP's ORR issued its Review Determination of evasion on July 16, 2020.

11.      Plaintiff is commencing this action with the concurrent filing of a summons and complaint, within 30 business days after publication of the July 16, 2020 decision, and has adhered to all the service and notification requirements as set out by the Rules of this Court.  *See* USCIT R. 3, 4.

12.      Accordingly, Plaintiff has commenced this action within the statutorily-prescribed time limits provided for under 19 U.S.C. § 1517(g)(1).

13.      Additionally, Plaintiff timely protested the liquidations of its Subject Entries and is timely contesting Customs' denials of such protests before this Court.

14.      Specifically, Customs denied Plaintiff's protests covering its Subject Entries on April 9, 2020, and April 21, 2020, respectively.  Plaintiff commenced this action on August 26, 2020, within 180 days of its protests being denied by CBP.

15.     Accordingly, this action is also timely filed under 28 U.S.C. § 2636(a)(1).

## STATEMENT OF FACTS

16.     On July 19, 2013, the U.S. Department of Commerce (hereinafter, "DOC" and/or "Commerce") issued the Order.  *See Xanthan Gum from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 78 FR 43143 (Dept. Commerce July 19, 2013).

17.     Dr. Bronner's imports xanthan gum for its use only as an ingredient in the manufacturing process of certain personal care products.  However, because most of the products that require xanthan gum are not manufactured by DBMS, but by third-parties, most of the xanthan gum shipments went directly to such third-party manufacturers.

18.     Dr. Bronner's does not sell or resell xanthan gum.

19.     On December 17, 2018, CP Kelco U.S., Inc. (hereinafter, the "Alleger" and/or "CP Kelco") filed an EAPA allegation with CBP, claiming that DBMS had transshipped xanthan gum from China (hereinafter, "Subject Merchandise") through India, in order to avoid payment of ADD (hereinafter, "Original Allegation").  DBMS was never provided with a copy of the Original Allegation.

20.     On February 4, 2019, DBMS received a Request for Information from CBP regarding one of the Subject Entries (hereinafter, "February Request"), wherein CBP requested further documents and information related to such entry.

21.     In order to properly respond to CBP's February Request, DBMS contacted the supplier of the Subject Merchandise (hereinafter, "Indian Supplier"), requesting it to provide the information needed.

22.     DBMS had been purchasing xanthan gum from the Indian Supplier since 2017.  From the beginning of their business relationship, the Indian Supplier represented to Dr. Bronner's that it purchased its xanthan gum from local Indian manufacturers; as a result, on the entry documentation associated with the Subject Entries, Dr. Bronner's reported India as the country of origin.

23.     When confronted with the February Request, the Indian Supplier advised Dr. Bronner's that the Subject Merchandise was in fact manufactured in China, by Shandong Fufeng Fermentation Co., Ltd. (hereinafter, "Fufeng"), a Chinese manufacturer and exporter of xanthan gum.

24.     After learning such information, on or about February 28, 2019, DBMS promptly complied with the February Request and submitted its responses to CBP, reporting the newly discovered information regarding Fufeng being the actual manufacturer of the Subject Merchandise.

25.     Due to DBMS' discovery that the xanthan gum imported from the Indian Supplier was not of Indian origin, Dr. Bronner's canceled any pending orders it had with the Indian Supplier and by April 4, 2019, completely ceased doing business with it.

26.     Due to the February Request, DBMS started investigating the issue surrounding the country of origin of the xanthan gum imported under the Subject Entries.  Furthermore, Dr. Bronner's has also implemented new measures related to the company's handling of future

importations and supply chain, including signing up for a Customs Trade Partnership Against Terrorism (hereinafter, "C-TPAT").

27.     Because the DBMS products which require xanthan gum were manufactured by third parties (and not by Dr. Bronner's), the xanthan gum shipments were typically sent directly to such third-party manufacturers.  However, two (2) of the shipments from the Indian Supplier were sent to a warehouse controlled by Dr. Bronner's; where it was subsequently discovered that the imported xanthan gum cartons had Shandong Fufeng Fermentation Co., Ltd. markings on the box.

28.     On March 8, 2019, CP Kelco submitted a revised allegation, which was formally acknowledged by CBP as having been "properly filed" on April 16, 2019 (hereinafter, "EAPA Allegation").

29.     On or about March 13, 2019, DBMS received a Notice of Action  (hereinafter, "March Notice") wherein CBP, on behalf of the United States, claimed it was owed ADD for six (6) entries filed during the time period from September 2017 through November 2018  (of which only three (3) are covered under the EAPA Investigation, as demonstrated herein).

30.     In DBMS' April 2, 2019 Response to the March Notice, Dr. Bronner's disclosed many of the aforementioned facts it had recently discovered when responding to CBP's February Request, including attaching photographs showing that Fufeng had manufactured (and likely also exported) the xanthan gum imported by DBMS under the Subject Entries.  Specifically, these photographs were of cartons of xanthan gum DBMS had imported.

31.     In its Initial Determination, when discussing such photographs, CBP acknowledged that "[s]ome of the text items visible in these photos, which are claimed by DBMS to be photos of

label information on a carton of xanthan gum, are *consistent* with information in sales documentation submitted by DBMS for one of its three entries." (emphasis added). *Initial Determination* at 10-11. Notwithstanding, CBP labeled the photographs not "credible," thereby completely disregard them.

32.  On April 19, 2019, CBP liquidated one (1) of Plaintiff's Subject Entries (which had been previously suspended as of February 13, 2019).

33.  CBP formally initiated this EAPA Investigation on May 7, 2019. *See Mem. to the File, Initiation of Investigation for EAPA Case Number 7284 – Dr. Bronner's Magic Soaps.* At this time, DBMS was not aware that an investigation had been initiated against it.

34.  On August 12, 2019, CBP formally notified DBMS of the EAPA Investigation and imposed interim measures against it. *See Notice of initiation of investigation and interim measures taken as to Ascension Chemicals LLC; Dr. Bronner's Magic Soaps; Tdale Manufacturing & Distributing, Inc.; UMD Solutions, LLC; Western Energy & Technologies LLC; Crude Chem Technology; and Glob Energy Corporation concerning evasion of the antidumping duty order on xanthan gum from the People's Republic of China* (Aug. 12, 2019) (hereinafter, "Notice of Initiation"). With its Notice of Initiation, CBP made available to DBMS and its counsel *only* redacted copies of CP Kelco's allegation and supporting documentation.

35.  CBP's Notice of Initiation further defined the scope of the EAPA Investigation as beginning on April 16, 2018, throughout the pendency of the investigation. As a result, a total of three (3) DBMS entries were subject to the EAPA Investigation and are thus covered by CBP's Determinations.

36.     DBMS entered its Subject Entries on May 21, 2018, July 19, 2018, and November 15, 2018, respectively.

37.     At the time when each of the Subject Entries was made, the cash deposit rate applicable to Fufeng's xanthan gum was zero percent (0.00%). *See Xanthan Gum From the People's Republic of China: Final Results of the Antidumping Duty Administrative Review and Final Determination of No Shipments; 2015-2016,* 83 Fed. Reg. 6,513, 6, 514 (Dep't Commerce Feb. 14, 2018) (hereinafter, "2015-2016 Final Results"). Moreover, the effective cash deposit rate for non-Chinese exporters of xanthan gum was "the rate applicable to the Chinese exporter(s) that supplied that non-Chinese exporter." *Id.*

38.     Here, the non-Chinese exporter of DBMS' Subject Merchandise imported under the Subject Entries was the Indian Supplier, and the Chinese exporter that supplied the Indian Supplier was Fufeng.

39.     On August 19, 2019, TRLED sent Dr. Bronner's a request for information, to which Plaintiff timely responded on September 10, 2019.

40.     On September 12, 2019, Plaintiff protested the April 9, 2019, liquidation of one (1) of its Subject Entries.

41.     On September 27, 2019, CBP liquidated the remaining two (2) Subject Entries (which had been previously suspended as of February 13, 2019).

42.     On November 21, 2019, Plaintiff protested the September 27, 2019, liquidation of its remaining two (2) Subject Entries.

43.     On November 22, 2019, DBMS submitted additional factual information to the administrative record associated with this EAPA Investigation (hereinafter, "Administrative Record").   CP Kelco submitted its additional factual information on November 25, 2019.   In response to CP Kelco's submission of factual information, on December 5, 2019, DBMS filed a Request to Partially Reject CP Kelco U.S., Inc.'s November 25, 2019 submission, which was denied by CBP on December 13, 2019.

44.     On January 6, 2020, DBMS submitted its written argument, pursuant to 19 C.F.R. § 165.26, in response to CP Kelco's EAPA Allegation, and to CBP's August 12, 2019 Notice of Initiation (hereinafter, DBMS' Written Argument).  The Alleger also submitted its written argument on January 6, 2020.

45.     On January 24, 2020, DBMS submitted a response to CP Kelco's January 6, 2020 written argument  (hereinafter, "DBMS' Response"), pursuant to 19 C.F.R. § 165.26(b); on the same day, CP Kelco also filed a response to the written arguments submitted by the parties to this EAPA Investigation, including to DBMS' Written Argument.

46.     On March 9, 2020, CBP issued its final determination as to evasion, finding that there was substantial evidence that DBMS "entered into the customs territory of the United States through evasion" merchandise covered by the Order.  *See Notice of Final Determination as to Evasion in EAPA Consolidated Case Number 7281* (Mar. 9, 2020) (available at

https://www.cbp.gov/document/guidance/eapa-cons-case-number-7281-ascension-chemicals-llc-dr-bronner-s-magic-soaps-0, last visited Feb. 25, 2022).

47.     On April 9, 2020, CBP denied Plaintiff's September 12, 2019, protest.

48.     On April 20, 2020, DBMS timely filed a request for *de novo* administrative review of the Initial Determination, pursuant to 19 U.S.C. § 1517(f)(1) and 19 C.F.R. § 165.41(a) (hereinafter, "DBMS' Request for Review").

49.     On April 21, 2020, CBP denied Plaintiff's November 21, 2019, protest.

50.     On July 16, 2020, the ORR affirmed CBP's Initial Determination.  *See Admin. Review Determination in EAPA Consolidated Case Number 7281* (July 16, 2020).  This appeal follows.

## STATEMENT OF CLAIMS

## COUNT 1

51.     Paragraphs 1 through 50 are hereby incorporated by reference as if fully set forth herein.

52.     CBP's finding of evasion against DBMS is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, because it failed to demonstrate, by substantial evidence, that at the time the Subject Entries were made they were covered merchandise within the meaning of EAPA.

53.     Evasion is defined as "the entry of *covered merchandise* into the customs territory of the United  States for consumption by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material and that results in any cash deposit or other security of any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise."  19 U.S.C. § 1517(a)(5)(A) (emphasis added).  Covered merchandise means merchandise that is subject to an antidumping and/or countervailing duty order.  19 U.S.C. § 1517(a)(3).

54.     At the time when the Subject Entries were made, the manufacturer of the Subject

Merchandise had been excluded from the Order.  *See CP Kelco US, Inc. v. United States,* 2018

Ct. Intl. Trade LEXIS 133, 40 Int'l Trade Rep. (BNA) 1226, SLIP OP. 2018-120; *see also CP*

*Kelco U.S., Inc. v. United States*, No. 13-00288 (Ct. Int'l Trade Sep. 17, 2018); *Xanthan Gum*

*From the People's Republic of China: Notice of Court Decision Not in Harmony With Amended*

*Final Determination in Less Than Fair Value Investigation; Notice of Amended Final*

*Determination Pursuant to Court Decision; Notice of Revocation of Antidumping Duty Order in*

*Part; and Discontinuation of Fourth and Fifth Antidumping Duty Administrative Reviews in*

*Part*, 83 Fed. Reg. 52,205 (Dep't of Commerce Oct. 16, 2018).  Consequently, when made,

DBMS' Subject Entries were not "subject" to the Order and were thus not covered merchandise,

within the meaning of EAPA.

## COUNT 2

55.     Paragraphs 1 through 54 are hereby incorporated by reference as if fully set forth herein.

56.     CBP's finding of evasion against DBMS is arbitrary, capricious, an abuse of discretion,

and otherwise not in accordance with law, because it failed to demonstrate, by substantial

evidence, that DBMS avoided payment of "applicable" antidumping cash deposits at the time it

Subject Entries were made.

57.     CBP based its determination that DBMS avoided the payment of "applicable"

antidumping cash deposits on an unlawful interpretation of the requirements for an affirmative

finding of evasion under EAPA, and an erroneous finding that, even if DBMS' Subject Entries

were subject to a zero percent (0.00%) rate at the time when they were made, misreporting the

country of origin still resulted in the avoidance of applicable AD cash deposits being collected

on its merchandise.  *See Review Determination* at 11.  CBP failed to articulate a satisfactory explanation for its conclusion.  In fact, CBP refused to address this required element for an affirmative finding of evasion under EAPA.  *Id.* at Note 28.

## COUNT 3

58.    Paragraphs 1 through 57 are hereby incorporated by reference as if fully set forth herein.

59.    CBP acted arbitrarily and capriciously, abused its discretion, and did not act in accordance with law, because it completely disregarded evidence DBMS placed on the Administrative Record fairly detracting from the substantiality of the evidence—evidence showing that Fufeng was the manufacturer of the Subject Merchandise.  *See Review Determination* at 11.  CBP failed to articulate a satisfactory explanation for its decision.

## COUNT 4

60.    Paragraphs 1 through 59 are hereby incorporated by reference as if fully set forth herein.

61.    CBP's application of adverse inferences against DBMS, as made in its Initial Determination (to the extent that CBP's ORR did not affirm such application of adverse inferences in its Review Determination), was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, because CBP unlawfully interpreted and applied such provision.

62.    Pursuant to 19 U.S.C. § 1517(c)(3)(A), "[i]f the Commissioner [of CBP] finds that a party or person . . .  has failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information, the Commissioner may, in making a

determination . . . use an inference that is adverse to the interests of that party or person in selecting from among the facts otherwise available to make the determination."

63.     First, DBMS did cooperate, to the best of its ability, with CBP. Moreover, even assuming that CBP's application of adverse inferences against Dr. Bronner's was appropriate, the "facts otherwise available" from where CBP must select when making an adverse inference were actually placed on the record by DBMS when it sought to rectify these unfortunate instances of misreporting the true country of origin for its Subject Merchandise—which were ignored by CBP, as set forth under COUNT 3.

## COUNT 5

64.     Paragraphs 1 through 63 are hereby incorporated by reference as if fully set forth herein.

65.     CBP's application of the interim measures adopted under the Notice of Initiation was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, because CBP acted contrary to its own directions by not continuing to suspend/extend the liquidation of the Subject Entries, and prematurely liquidating such entries at the China-wide rate, without having received liquidation instructions from DOC first.

## COUNT 6

66.     Paragraphs 1 through 65 are hereby incorporated by reference as if fully set forth herein.

67.     CBP did not fully comply with all procedures that EAPA sets forth. 19 U.S.C. § 1517(g)(2)(A).

68.     Contrary to 19 U.S.C. § 1517(c)(1)(A), CBP failed to make its determination based on "substantial evidence," by erroneously shifting the burden of proof to DBMS and wrongfully

claiming that "[t]he burden to prove entitlement to a rate other than the PRC-wide rate rests with the importer making the claim." *Review Det*ermination at 13. This finding was also arbitrary and capricious, and an abuse of discretion, because CBP wrongfully applied the standard of review—under the EAPA statute, CBP must find, by substantial evidence, that evasion has occurred; in contrast, the importer does not have to disprove the allegation by substantial evidence, but merely by evidence sufficient to fairly detract from the substantiality of the evidence, which DBMS did.

## COUNT 7

69.    Paragraphs 1 through 68 are hereby incorporated by reference as if fully set forth herein.

70.    CBP did not fully comply with all procedures that EAPA sets forth. 19 U.S.C. § 1517(g)(2)(A).

71.    Contrary to 19 U.S.C. § 1517(c)(1)(A), CBP failed to make its final determination within "300 calendar days" after CBP had initiated the EAPA investigation—CBP formally initiated the Investigation on May 7, 2019, and it should have issued its Initial Determination by no later than March 2, 2020. Instead, CBP issued its Initial Determination on March 9, 2020.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against the Defendant:

(1) Holding unlawful and setting aside U.S. Customs and Border Protection's March 9, 2020 Initial Determination;

(2) Holding unlawful and setting aside U.S. Customs and Border Protection's July 16, 2020 Review Determination;

(3) Holding unlawful and setting aside U.S. Customs and Border Protection's April 9, 2020, and April 21, 2020, denials of Plaintiffs' protests covering the erroneous liquidations of its Subject Entries;

(4) Ordering CBP to refund Plaintiff any monies collected on its imports as a result of U.S. Customs and Border Protection's Enforce and Protect Act investigation in Consolidated Case No. 7281;

(5) Award Plaintiff a judgment for costs, including reasonable attorney fees, in accordance with the Equal Access to Justice Act, 20 U.S.C. § 2412; and

(6) Granting any such additional relief as the Court may deem just and proper.


Respectfully submitted,

/s/ Robert W. Snyder
ROBERT W. SNYDER
LAURA A. MOYA
LAW OFFICES OF ROBERT W. SNYDER
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail: rsnyder@rwsnyderlaw.com
           lmoya@rwsnyderlaw.com


Dated: **February 25, 2022**          *Counsel for Plaintiff* ALL ONE GOD FAITH, INC.
Irvine, CA                                         D/B/A DR. BRONNER'S MAGIC SOAPS

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| |
|---|
| ALL ONE GOD FAITH, INC., D/B/A DR. BRONNER'S MAGIC SOAPS, *et al.* |
| Plaintiff, |
| v. |
| UNITED STATES, *et al.,* |
| Defendant. |

**Consolidated Court No.: 20-00164**

## CERTIFICATE OF SERVICE

I, Robert W. Snyder, hereby certify that on February 25, 2022, the foregoing First Amended / Supplemental Complaint has been served upon the following parties, via electronic service (e-mail) *only*:

**On behalf of Defendant United States:**

Kelly A. Krystyniak
kelly.a.krystyniak@usdoj.gov

Ashley Akers
ashley.akers@usdoj.gov

Corey M. Celt
corey.m.celt@cbp.dhs.gov

**On behalf of Defendant-Intervenor CP Kelco U.S., Inc.:**

Matthew Clark
matthew.clark@arentfox.com

Nancy Noonan
nancy.noonan@arentfox.com

Leah Scarpelli
leah.scarpelli@arentfox.com

**On behalf of Consolidated Plaintiffs Ascension Chemicals LLC, GLōB Energy Corporation, UMD Solutions LLC, and Crude Chem Technology LLC:**

Kyl Kirby
kyl@kirbyfedlaw.com


Respectfully submitted,

/s/ Robert W. Snyder
ROBERT W. SNYDER
LAURA A. MOYA
LAW OFFICES OF ROBERT W. SNYDER
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail: rsnyder@rwsnyderlaw.com
        lmoya@rwsnyderlaw.com


Dated: **February 25, 2022**          *Counsel for Plaintiff* ALL ONE GOD FAITH, INC.
        Irvine, CA                    D/B/A DR. BRONNER'S MAGIC SOAPS