Slip Op. 22-96

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ALL ONE GOD FAITH, INC., D/B/A DR. BRONNER'S MAGIC SOAPS**, *et al.*,<br><br>    **Plaintiffs**,<br><br>v.<br><br>**UNITED STATES**,<br><br>    **Defendant**,<br><br>**and**<br><br>**CP KELCO U.S., INC.**,<br><br>    **Defendant-Intervenor**. | **Before: Gary S. Katzmann, Judge**<br>**Consol. Court No. 20-00164**<br><br>*PUBLIC VERSION* |

## OPINION

[The court grants the United States' motion to dismiss Dr. Bronner's complaint for lack of subject-matter jurisdiction, dismisses GLōB's complaint for lack of subject-matter jurisdiction, and denies plaintiffs' remaining motions for judgment on the agency record.]

Dated: August 18, 2022

<u>Laura A. Moya</u> and <u>Robert Snyder</u>, Law Offices of Robert W. Snyder, of Irvine, CA, for Plaintiff All One God Faith, Inc., d/b/a Dr. Bronner's Magic Soaps.

<u>Kyl J. Kirby</u>, Kyl J. Kirby, Attorney and Counselor at Law, P.C., of Fort Worth, TX, for Consolidated Plaintiffs Ascension Chemicals LLC, UMD Solutions LLC, GLōB Energy Corporation, and Crude Chem Technology LLC.

<u>Kelly A. Krystyniak</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for Defendant United States. With her on the brief were <u>Brian M. Boynton</u>, Acting Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>L. Misha Preheim</u>, Assistant Director. Of counsel on the brief was <u>Tamari J. Lagvilava</u>, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of New York, N.Y.

<u>Matthew J. Clark</u>, ArentFox Schiff LLP, of Washington, D.C., for Defendant-Intervenor CP Kelco U.S., Inc.

      Katzmann, Judge: Xanthan gum is a fermented polysaccharide gum used in a variety of industries as a thickening, stabilizing, or emulsifying agent: for example, to increase viscosity and stickiness in doughs and sauces, to prevent separation and ensure uniform texture in industrial liquids, soaps, and cosmetics, and to preserve or enhance a variety of foods.  It now comes before the court as a result of a determination of evasion by U.S. Customs and Border Protection ("CBP"), which has occasioned an appeal that presents a number of sticky jurisdictional, procedural, and substantive issues for the court's review.

      This litigation arises from the determination that xanthan gum from the People's Republic of China ("PRC") was being transshipped though India in an effort to evade antidumping duties imposed by the U.S. Department of Commerce's ("Commerce") antidumping duty order, namely the Chinawide entity rate applied to xanthan gum from PRC.[1]  Claiming that the entries should be subject to a 0.00% duty rate, importers Plaintiff All One God Faith, Inc. d/b/a Dr. Bronner's Magic Soaps ("Dr. Bronner's") and Consolidated Plaintiffs GLōB Energy Corporation ("GLōB"), Ascension Chemicals LLC ("Ascension"), UMD Solutions LLC ("UMD"), and Crude Chem Technology LLC ("Crude") each challenge CBP's determination as arbitrary, capricious, and an abuse of discretion.  Thickening the plot further, Defendant the United States ("the Government") contends that Dr. Bronner's claims must be dismissed because its time to appeal the liquidation of its merchandise to this court has expired without action.  The court concludes that it lacks jurisdiction over GLōB and Dr. Bronner's challenges to CBP's liquidation of the disputed merchandise because the relevant entries have been finally liquidated.  As to Ascension, UMD, and Crude, whose entries have not been finally liquidated, the court concludes that CBP's

---

[1] See <u>Xanthan Gum from the People's Republic of China: Am. Final Determ. of Sales at Less Than Fair Value and Antidumping Duty Order</u>, 78 Fed. Reg. 43,143 (Dep't Commerce Jul. 19, 2013) ("AD Order").

determination was not arbitrary and capricious, and was supported by substantial evidence. Accordingly, Defendant's motion to dismiss is granted and Plaintiff's and Consolidated Plaintiffs' motions for judgment on the agency record are denied.

## BACKGROUND

### I.     *Legal Framework*

To level the playing field for domestic industries, the Enforce and Protect Act of 2015 ("EAPA"), codified at 19 U.S.C. § 1517, empowers CBP to investigate allegations that an importer has evaded antidumping or countervailing duties. See generally CBP, Trade Facilitation and Trade Enforcement Act of 2015—Overview, CBP.gov (Oct. 2016) https://www.cbp.gov/sites/default/files/assets/documents/2016Oct/Trade%20Facilitation%20and%20Trade%20Enforcement%20Act%20of%202015%20-%20Overview.pdf.   Specifically, the statute provides that CBP must, within fifteen days of receiving an allegation of evasion, determine whether the information provided in that allegation "reasonably suggests that covered merchandise has been entered into the . . . United States through evasion."   19 U.S.C. § 1517(b)(1).   If so, CBP must initiate an investigation and, within 300 days of initiation, "make a determination, based on substantial evidence, with respect to whether such covered merchandise" was indeed entered through evasion. 19 U.S.C. § 1517(c)(1)(A).  For EAPA purposes, "evasion" is defined as:

> [E]ntering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

19 U.S.C. § 1517(a)(5)(A).   In essence, "evasion" can be broken down into three distinct components: (1) merchandise subject to an antidumping or countervailing duty order must be

entered into the United States (2) by means of falsified or incomplete documentation such that (3) the applicable duties or deposits owed on that merchandise are either foregone or reduced.

## II.     Factual Background

Plaintiffs and Consolidated Plaintiffs are manufacturers and distributors of personal care products, pharmaceutical and research chemicals, and oilfield products, including drilling fluid additives.    Compl. at 3, Aug. 26, 2020, ECF No. 2; About, GLōB Energy Corp., https://www.globenergy.net/about (last visited Aug. 17, 2022); About Us, Ascension Chemical, https://ascensionchemical.com/pages/about-us (last visited Aug. 17, 2022); About Us, UMD Solutions, http://umdsolutions.com/about-us/ (last visited Aug. 17, 2022); About Us, CrudeChem Technology, https://crudechem.com/about-us/ (last visited Aug. 17, 2022).   They are also all importers of xanthan gum.[2]   Compl. at 3, GLōB Energy Corp. v. United States, No. 20-cv-00161 (CIT Aug. 26, 2020), ECF No. 4 ("GLōB Compl."); Compl. at 3, Ascension Chems. LLC v. United States, No. 20-00160 (CIT Aug. 26, 2020), ECF No. 4  ("Ascension Compl."); Compl. at 3, UMD Sols. LLC v. United States, No. 20-00162 (CIT Aug. 26, 2020), ECF No. 4 ("UMD Compl."); Compl. at 3, Crude Chem Tech. LLC v. United States, No. 20-00163 (CIT Aug. 26, 2020), ECF No. 4 ("Crude Compl."); see 21 C.F.R. § 172.695 (setting out the nature and uses of xanthan gum).

### A.     The EAPA Investigation

The dispute now before the court originated in a letter submitted to CBP by CP Kelco U.S., Inc. ("CP Kelco") on December 17, 2018.  See generally, EAPA Allegation (Dr. Bronner's) (Dec. 17, 2018), P.D. 2.  The letter alleged that Dr. Bronner's had been importing "significant volumes of xanthan gum from . . . India" which was in reality of Chinese origin, as evident from the fact

---

[2] Defendant-Intervenor CP Kelco U.S., Inc. is not an active participant in this litigation, but is similarly a domestic manufacturer of xanthan gum.  Mot. to Intervene at 1, Sept. 25, 2020, ECF No. 11.

that "xanthan gum is only manufactured in four countries worldwide: Austria, France, China, and the United States." Id. at 4. Accordingly, CP Kelco requested that CBP investigate Dr. Bronner's for potential evasion of the antidumping duty order on xanthan gum from PRC through illegal transshipment.[3] Id. at 5; see also AD Order. On March 8, 2019, CP Kelco revised and expanded its allegations against Dr. Bronner's and filed additional allegations of xanthan gum transshipment against GLōB, Ascension, UMD, and Crude. Revised EAPA Allegation (Dr. Bronner's), P.D. 27–28; EAPA Allegation (GLōB), P.D. 23; EAPA Allegation (Ascension), P.D. 25; EAPA Allegation (UMD), P.D. 31; EAPA Allegation (Crude), P.D. 21. On August 12, 2019, CBP, through its Trade Remedy and Law Enforcement Division ("TRLED") initiated an EAPA investigation of all five importers. Notice of Investigation (CBP Aug. 12, 2019), P.D. 92, C.D. 40.

---

[3] The AD Order assigned weighted-average dumping margins as follows:

| Exporter | Producer | Weighted-average dumping margin (percent) |
|---|---|---|
| Neimenggu Fufeng Biotechnologies Co., Ltd (aka Inner Mongolia Fufeng Biotechnologies Co., Ltd.) / Shandong Fufeng Fermentation Co., Ltd. | Neimenggu Fufeng Biotechnologies Co., Ltd. (aka Inner Mongolia Fufeng Biotechnologies Co., Ltd.) / Shandong Fufeng Fermentation Co., Ltd. | 12.90 |
| Deosen Biochemical Ltd. | Deosen Biochemical Ltd. / Deosen Biochemical (Ordos) Ltd. | 128.32 |
| A.H.A. International Co., Ltd. | Shandong Fufeng Fermentation Co., Ltd. | 70.61 |
| A.H.A. International Co., Ltd. | Deosen Biochemical Ltd. | 70.61 |
| CP Kelco (Shandong) Biological Company Limited | Kelco (Shandong) Biological Company Limited | 70.61 |
| Hebei Xinhe Biochemical Co. Ltd. | Hebei Xinhe Biochemical Co. Ltd. | 70.61 |
| Shanghai Smart Chemicals Co. Ltd. | Deosen Biochemical Ltd. | 70.61 |
| PRC-Wide Entity* | | 154.07 |

* The PRC-wide entity includes Shandong Yi Lian Cosmetics Co., Ltd., Shanghai Echem Fine Chemicals Co., Ltd., Sinotrans Xiamen Logistics Co., Ltd., and Zibo Cargill HuangHelong Bioengineering Co., Ltd.

On March 9, 2020, TRLED issued a final determination in which it concluded that there was "substantial evidence that [the importers] entered into the customs territory of the United States through evasion merchandise covered by the antidumping duty ("AD") order . . . on xanthan gum from the People's Republic of China."  Notice of Final Determination as to Evasion at 1–2 (CBP Mar. 9, 2020), P.D. 288, C.D. 113 ("Initial EAPA Determination").  In reaching its determination, CBP relied upon (1) "[e]ach importer's failure to submit any information to CBP demonstrating that the merchandise was produced in India," and (2) "the information provided by [CP Kelco] and available from other sources (e.g. Panjiva, Indian supplier websites, etc.) regarding xanthan gum import trends and the lack of xanthan gum production in India," in addition to the following importer-specific factors.  Initial EAPA Determination at 2–3.

### 1.     *Dr. Bronner's*

With respect to Dr. Bronner's, TRLED rejected Dr. Bronner's argument that there was no evasion because the xanthan gum in question (1) was not "covered merchandise" for purposes of an evasion determination, and (2) was properly subject to a 0.00% cash deposit rate such that there was no reduction in duties paid.[4]  Specifically, Dr. Bronner's argued that because the imported xanthan gum was manufactured and exported by excluded Chinese exporter [[

]], and because the Indian exporter [[

]] was not included in the AD Order and thus lacked an express cash deposit rate of its own, the xanthan gum in question would properly be subject to the 0.00% cash deposit rate

---

[4] Dr. Bronner's did not dispute that the merchandise was entered by means of a material misstatement (namely, as Indian- rather than Chinese-origin xanthan gum).  See Letter from R. Snyder to D. Augustin re: Submission of Written Arg. Pursuant to 19 C.F.R. § 165.26 at 3 (Jan. 6, 2020) P.D. 264 (noting that "Dr. Bronner's fully acknowledges and regrets its inadvertent reporting of an incorrect country of origin for the xanthan gum imported under the entries subject to the EAPA Investigation" by CBP).

applicable to the excluded exporter.  Id. at 7.  TRLED concluded that this argument was

unconvincing because (1) [[              ]], having expressly admitted it exported Chinese-origin

xanthan gum to Dr. Bronner's, was not an excluded exporter for purposes of the AD Order, and

(2) neither [[          ]] nor Dr. Bronner's had provided any production information indicating

that the specific xanthan gum imported into the United States was manufactured by [[

          ]] or another excluded entity.  Id. at 7–8.  TRLED also rejected the documentary evidence

allegedly showing [[                    ]] involvement after concluding that none of the digital

records provided by Dr. Bronner's clearly originated with [[

]], and that the photographic records submitted were both contradictory (insofar as they indicate

the merchandise was not imported by [[          ]]) and unreliable (because they were not relied

upon by Dr. Bronner's in the course of its initial import of the xanthan gum in question).  Id. at 9–

11.  Ultimately, TRLED concluded that the lack of reliable information on the record and lack of

cooperation from Dr. Bronner's and [[          ]] supported a finding of evasion.  Id. at 11.

### 2.    *GLōB, Ascension, UMD, Crude*

With respect to each of the Consolidated Plaintiffs, TRLED likewise rejected the argument

that there was no evasion because the xanthan gum in question (1) was not "covered merchandise"

for purposes of an evasion determination, and (2) was properly subject to a 0.00% cash deposit

rate such that there was no reduction in duties paid.[5]  Id. at 5–6, 13–16.  Although Consolidated

Plaintiffs, like Dr. Bronner's, claimed that a [[              ]] entity was the original producer of

the imported xanthan gum, TRLED explained that the third-party Import Genius database

information submitted in support of this claim was inadequate.  Id. at 6, 13, 15, 17.  Specifically,

---

[5] Like Dr. Bronner's, GLōB, Ascension, UMD, and Crude do not contest that the entry of the subject merchandise as Indian- rather than Chinese-origin xanthan gum was a material misstatement.

TRLED noted that "guesses derived from shipment information of a third party source" are no substitute for "documentation demonstrating the actual manufacturer and exporter of the specific merchandise in question." Id. TRLED also explained that the Import Genius data only identifies a "shipper" for given entries, with no reference to manufacturers, producers, or exporters. Id. Ultimately, TRLED concluded that the lack of information provided and lack of cooperation from Consolidated Plaintiffs and their Indian exporter Chem Fert supported a finding of evasion. Id. Separately, TRLED also rejected Consolidated Plaintiffs' argument that the misidentification of the subject merchandise was clerical error rather than a material misstatement because "it [was] evident that [Consolidated Plaintiffs] intended to report the entries as Entry Type 01 ('Consumption – Free and Dutiable') entries of merchandise of Indian origin." Id. at 7 n.18, 13 n.45, 16 n.53, 18 n.60.

## B.    The Administrative Review

All five importers sought administrative review of TRLED's decision, and on July 16, 2020, CBP's Office of Regulations and Rulings ("ORR") issued a de novo ruling affirming the Initial EAPA Determination. Administrative Review Determination re: Enforce and Protect Act Case Number 7281 (CBP Jul. 16, 2020), P.D. 305, C.D. 115–116 ("EAPA Review Determination").

With respect to Dr. Bronner's, ORR reiterated TRLED's conclusions that [[         ]] was not the producer of Dr. Bronner's xanthan gum imports, which in fact were likely produced by "a single Chinese entity." EAPA Review Determination at 10. As neither [[         ]] nor Dr. Bronner's provided evidence that the Chinese producer was excluded from the AD Order (as a [[         ]] entity or otherwise) ORR likewise joined TRLED in finding that the disputed xanthan gum imports were covered merchandise. Id. at 10. ORR went on to note that Dr.

Bronner's entered the covered merchandise by means of "material and false documents or statements," including "false certificates of origin" and identifications. Id. at 11. Because "there [was] not enough evidence in the record to demonstrate the identity of the specific Chinese producer/exporter of the subject merchandise," ORR concluded there was "insufficient evidence to show that the entries were in fact subject to a 0.00% cash deposit rate." Id. at 11. As the falsified documentation resulted in "no cash deposits [being] applied to the merchandise" with no evidence that a 0.00% rate was appropriate, ORR therefore found that Dr. Bronner's indeed "entered covered merchandise by means of material and false documents or statements that resulted in the avoidance of applicable [antidumping duty] cash deposits being collected on such merchandise." Id. Finally, ORR rejected Dr. Bronner's argument that TRLED incorrectly applied adverse inferences pursuant to 19 C.F.R. § 165.6. Id. at 13. ORR instead concluded both that adverse inferences were properly applied to fill "evidentiary gaps" resulting from Dr. Bronner's failure to submit evidence indicating that the xanthan gum was produced in PRC by an entity subject to a 0.00% cash deposit rate, and that even without such inferences a determination of evasion would be proper. Id. at 14.

With respect to Consolidated Plaintiffs, ORR also affirmed the conclusions of TRLED. First, ORR noted that "substantial record evidence indicates that the actual country of origin of the xanthan gum entered" by Consolidated Plaintiffs was China, not India. Id. at 15. In support of this conclusion, ORR pointed to statements by Consolidated Plaintiffs' shared importer, Chem Fert. Id. In relevant part, Chem Fert reported to CBP that "it imports the xanthan gum into India and then repacks [it]" for export, and that Consolidated Plaintiffs "knew this fact very well" and had expressly requested that Chem Fert "import [xanthan gum] from China and thereafter repack it into India and export it to the United States." Id. Next, ORR concluded that Consolidated

**PUBLIC VERSION**

Plaintiffs had indeed engaged in illegal evasion of the AD Order.  Id. at 15.  Specifically, ORR

determined that Consolidated Plaintiffs "engaged in evasion because the Chinese-origin xanthan

gum was identified as Type '01' with India as the country of origin at the time of entry, and no

cash deposits were applied to the merchandise" resulting in the "avoidance of applicable AD cash

deposits." Id. at 15–16.  In so doing, ORR again rejected Consolidated Plaintiffs' argument that

the misidentification of the subject merchandise was clerical error rather than a material

misstatement, noting that they "consciously declared the merchandise as of Indian origin and Entry

Type 01 ('Consumption – Free and Dutiable')" and "that the declarations were (even if

unwittingly) based on false facts, does not make them the result of clerical error." Id. at 18.

### C.    The Instant Appeal

Dr. Bronner's, GLōB, Ascension, UMD and Crude separately sought the court's review of

CBP's determinations on August 26, 2020.  See Compl.; Ascension Compl.[6]  In their complaints,

Dr. Bronner's and the Consolidated Plaintiffs each asserted jurisdiction pursuant to 19 U.S.C.

§ 1517(g) and 28 U.S.C. § 1581(c) and challenged CBP's determination of evasion with respect

to their entries of xanthan gum between April 16, 2018, and the conclusion of CBP's investigation

on March 9, 2020 (the "Subject Entries").  Id.  On October 5, 2020, the five cases were

consolidated under the present action.  Order, ECF No. 20.  Thereafter, Dr. Bronner's and the

Consolidated Plaintiffs each filed motions for judgment on the agency record.  Pl. All One God

Faith, Inc.'s Mot. for J. on the Agency R., Feb. 16, 2021, ECF No. 26 ("Pl.'s Br."); Pl.'s Mot. For

J. Upon the Agency R. Pursuant to Rule 56.2, Feb. 16, 2021, ECF No. 29 ("Consol. Pls.' Br.").

On August 2, 2021, the Government responded in opposition.  Def.'s Partial Mot. to Dismiss and

---

[6] As the Consolidated Plaintiffs' filings are substantively identical, the court will cite to
Ascension's filings throughout, except where a specific party's arguments or entries are addressed.

Resp. to Pls.' Mots. for J. Upon the Admin. R., ECF No. 40.  Simultaneously, the Government

moved to dismiss Dr. Bronner's complaint on the basis that Dr. Bronner's protested CBP's

liquidation of its entries but had "failed to timely appeal the denial of those protests" to the court.

Def.'s Partial Mot. to Dismiss and Resp. to Pls' Mots. for J. Upon the Agency R., Aug. 2, 2021,

ECF No. 40 ("Def.'s Resp.").  All parties replied in support of their motions.  Pl. All One God

Faith, Inc.'s Resp. in Opp. to Def.'s Partial Mot. to Dismiss and Reply in Further Supp. of its Mot

for J. on the Agency R., Sept. 1, 2021, ECF No. 46 ("Pl.'s Reply"); Pl.'s Reply to Def.'s Opp. to

Pl.'s R. 56.2 Mot. for J. Upon the Agency R., Sept. 1, 2021, ECF No. 42 ("Consol. Pls.' Reply");

Def.'s Reply in Supp. of its Partial Mot. to Dismiss, Sept. 22, 2021, ECF No. 51 ("Def.'s Reply").

In response to questions from the court, the parties each filed a supplemental brief in

anticipation of oral argument. Pl. All One God Faith Inc.'s Resps. to Ct.'s Qs. for Oral Arg. Issued

Feb. 2, 2022, Feb. 11, 2022, ECF No. 62 ("Pl.'s OAQ Resps."); Consol. Pls.' Resp. to Qs. for Oral

Arg., Feb. 11, 2022, ECF No. 61 ("Consol. Pls.' OAQ Resps."); Def.'s Resp. to the Ct.'s Qs., Feb.

11, 2022, ECF No. 60 ("Def.'s OAQ Resps.").  Oral argument on both motions was held on

February 15, 2022. Oral Argument, ECF No. 63.  Thereafter, on February 22, 2022, the parties

each submitted a post-argument brief.  Pl. All One God Faith, Inc.'s Post-Oral Arg. Submission,

ECF No. 66 ("Pl.'s Suppl. Br."); Consol. Pls.' Post.-Arg. Submission For Oral Arg., ECF No. 64

("Consol. Pls.' Suppl. Br."); Def.'s Post-Arg. Submission, ECF No. 65 ("Def.'s Suppl. Br.").

###### D.    The Subject Entries

Ultimately, the following entries subject to CBP's Initial EAPA Determination and EAPA

Review Determination (together, "EAPA Determinations") are currently before the court:

| Importer | Entry No. | Date Entered | Date Liquidated | Date Protested | Status |
|---|---|---|---|---|---|
| Dr. Bronner's | ERW-10387009 | 05/21/2018 | 04/19/2019 | 9/12/2019 | Denied 4/09/2020 |
| Dr. Bronner's | ERW-10398428 | 07/19/2018 | 04/24/2020 | 11/21/2019 | Denied 4/21/2020 |
| Dr. Bronner's | ERW-10420743 | 11/15/2018 | 04/24/2020 | 11/21/2019 | Denied 4/21/2020 |
| GLōB | 51084554024 | 01/06/2019 | 10/04/2019 | 03/02/2020 | Denied 7/08/2021 |
| GLōB | 51084335622 | 03/06/2019 | 10/04/2019 | 03/02/2020 | Denied 7/08/2021 |
| Ascension | CFL00044009 | 11/29/2018 | 10/04/2019 | 03/02/2020 | Suspended |
| Ascension | CFL00044652 | 12/20/2018 | 10/04/2019 | 03/02/2020 | Suspended |
| Ascension | CFL00045105 | 01/19/2019 | 10/04/2019 | 03/02/2020 | Suspended |
| Ascension | CFL00045113 | 01/19/2019 | 10/04/2019 | 03/02/2020 | Suspended |
| Ascension | CFL00045287 | 01/30/2019 | 10/04/2019 | 03/02/2020 | Suspended |
| Ascension | CFL00046368 | 03/14/2019 | 10/04/2019 | 03/02/2020 | Suspended |
| Ascension | CFL00042953 | 10/17/2018 | 10/04/2019 | 03/02/2020 | Suspended |
| UMD | KM635180961 | 08/16/2018 | 10/04/2019 | 03/02/2020 | Suspended |
| UMD | KM635214364 | 11/28/2018 | 10/04/2019 | 03/02/2020 | Suspended |
| UMD | KM635217094 | 12/20/2018 | 10/04/2019 | 03/02/2020 | Suspended |
| Crude | 30046931531 | 03/06/2019 | 10/11/2019 | 04/08/2020 | Suspended |
| Crude | 30046922605 | 01/06/2019 | 10/11/2019 | 04/08/2020 | Suspended |

See Consol. Pls.' OAQ Resps. at Ex. 1; Def.'s Suppl. Br. at 2; Def.'s Resp. at Ex. 1.

## JURISDICTION AND STANDARD OF REVIEW

In general, the court has jurisdiction over a determination of evasion pursuant to 28 U.S.C. § 1581(c), which grants exclusive jurisdiction over "any civil action commenced under [19 U.S.C. § 1516A or 1517]," and pursuant to 19 U.S.C. § 1517(g), which provides that an importer "determined to have entered . . . covered merchandise through evasion . . . may seek judicial review" of the determination and CBP's review thereof. The latter section also sets out the standard of review, stating that for a determination of evasion under subsection (c) or an administrative review of such determination under subsection (f), "the United States Court of International Trade shall examine . . . whether [CBP] fully complied with all procedures under subsections (c) and (f); and . . . whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2)(A)–(B).

To survive review under the arbitrary and capricious standard, a determination of evasion must have "examined 'the relevant data' and articulated 'a satisfactory explanation' for [its] decision, 'including a rational connection between the facts found and the choice made.'" Dep't of Com. v. New York, 139 S. Ct. 2551, 2569 (2019) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)); see also Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 419 (1971) (agencies must provide adequate reasons for their decisions). Similarly, "[a]n abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (citation omitted). The court's review of CBP's "determination as to evasion may encompass interim decisions subsumed into the final determination." Diamond Tools Tech. LLC v. United States, 45 CIT __, __, 545 F. Supp. 3d 1324, 1331 (2021) (quoting Vietnam Firewood Co. Ltd. v. United States, 44 CIT __, __, 466 F. Supp. 3d 1273, 1284 (2020)).

The jurisdictional grant over CBP's determination of evasion effectuated by 19 U.S.C. § 1517(g) and 28 U.S.C. § 1581(c) does not, however, encompass the contestation of liquidation (erroneous or otherwise) of an entry subject to such determination. The only mentions of liquidation in 19 U.S.C. § 1517 broadly are in 19 U.S.C. § 1517(e)(1), which provides for suspension of liquidation during CBP's EAPA investigation, and 19 U.S.C. § 1517(d)(1)(A)(i), which provides that upon determination of evasion CBP shall likewise "suspend the liquidation of unliquidated entries of such covered merchandise that are subject to the determination and that enter on or after the date of the initiation of the [EAPA] investigation." This is manifestly not a grant of authority to the courts.

Accordingly, to the extent an importer wishes to appeal the liquidation of its merchandise either before or after a determination of evasion, that appeal must traverse the typical channels. Where erroneous liquidation has occurred -- including where CBP has failed to comply with 19 U.S.C. § 1517(d)(1)(A)(i)'s requirement that it suspend the liquidation of subject merchandise -- the aggrieved importer must first file a protest specifying CBP's error as set out in 19 U.S.C. § 1514(c).  Only upon the denial of such protest, or upon the denial of an application for further administrative review of a denied protest, may an importer then appeal the liquidation to this court. 19 U.S.C. §§ 1515(a), 1515(c); 28 U.S.C. § 1581(a).  If no protest is filed, or if a protest is filed and denied but not appealed, even erroneous liquidation "shall be final and conclusive upon all persons (including the United States and any officer thereof)."  19 U.S.C. § 1514(a).  The court thus has jurisdiction over timely appealed protests, but lacks jurisdiction over finally liquidated entries, pursuant to 19 U.S.C. §§ 1514(a) and 1515(a), and 28 U.S.C. § 1581(a).

## DISCUSSION

As has been noted, Dr. Bronner's and the Consolidated Plaintiffs now contest the EAPA Determinations as arbitrary, capricious, and an abuse of discretion.  The Government responds that (1) the court lacks jurisdiction over Dr. Bronner's and GLōB's entries such that they must be dismissed, and (2) with respect to the entries within the jurisdiction of the court, CBP did not act arbitrarily and capriciously or abuse its discretion in declining to refer a changed circumstances review to Commerce, or in applying adverse inferences against the alleged foreign manufacturers of the Subject Entries. Def.'s Br. at 23–29.

### I.    *The Liquidated Entries*

To adjudicate a case, the court must have subject-matter jurisdiction over the claims presented.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998). "[W]hen a

federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). Furthermore, where subject-matter jurisdiction is challenged, the "party invoking the [Court of International Trade's] jurisdiction has the burden of establishing that jurisdiction." Wangxiang Am. Corp. v. United States, 12 F.4th 1369, 1373 (Fed. Cir. 2021) (citing Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006)).

Here, liquidation of twelve of the seventeen entries before the court has been suspended by CBP. See Consol. Pls.' OAQ Resps. at Ex. 1; Def.'s Suppl. Br. at 2; Def.'s Resp. at Ex. 1. The remaining five entries, belonging to Dr. Bronner's and GLōB, have been finally liquidated. Id.; see also Def.'s Reply at 1–2. The Government acknowledges that its liquidation of the entries was "evidently in error" but notes that 19 U.S.C. § 1514(a) provides a statutory remedy for such error. Def.'s Reply at 1–2; Def.'s Opp. to Pl.'s Mot. for Prelim. Inj. at 1–2, Sept. 30, 2021, ECF No. 53 ("Def.'s PI Resp."). Specifically, the statute provides that "any clerical error, mistake of fact, or other advertence . . . adverse to the importer" regarding

> the liquidation or reliquidation of an entry . . . shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade.

19 U.S.C. § 1514(a). Although both Dr. Bronner's and GLōB protested the liquidation of their entries, that protest was denied in light of the issuance of the Initial EAPA Determination on March 9, 2020, and neither Dr. Bronner's nor GLōB timely appealed. Consol. Pls.' OAQ Resps. at Ex. 1; Def.'s Suppl. Br. at 2; Def.'s Resp. at Ex. 1; see 28 U.S.C. § 2636(a)(1) (providing 180-day deadline for appeal). Instead, both parties initiated the instant action on August 26, 2020,

requesting the court's review of the EAPA Determinations under 19 U.S.C. § 1517(g) and 28

U.S.C. § 1581(c).[7] Compl.; Ascension Compl.

      The court lacks subject-matter jurisdiction over Dr. Bronner's and GLōB's claims because

the liquidation of the relevant entries is final and conclusive.  As stated above, the court's

jurisdiction over a determination of evasion -- effectuated by 19 U.S.C. § 1517(g) and 28 U.S.C.

§ 1581(c) -- does not independently permit review of the erroneous liquidation of merchandise

subject to that determination.  Rather, the court may only review a claim of erroneous liquidation

where that liquidation has been timely protested and the denial of such protest appealed.  <u>See</u> 19

U.S.C. §§ 1514(a), 1514(c); 28 U.S.C. § 1581(a).  Here, while both Dr. Bronner's and GLōB

protested the liquidation of the Subject Entries, neither timely contested the denial of those protests

before the court.  <u>See</u> Consol. Pls.' OAQ Resps. at Ex. 1; Def.'s Suppl. Br. at 2; Def.'s Resp. at

Ex. 1.  Indeed, neither party even mentions those protests in its complaint or motion for judgment

on the agency record.  <u>See generally</u> Compl.; GLōB Compl.; Pl.'s Br.; Consol. Pls.' Br.; <u>see also</u>

Def.'s Br. at 17 (noting Dr. Bronner's failure to address the denied protests).  "[F]ailure to

challenge" CBP's liquidations before the court "result[s] in those liquidations becoming final and

conclusive."  <u>United States v. Am. Home Assur. Co.</u>, 789 F.3d 1313, 1323 (Fed. Cir. 2015); <u>see

also</u> <u>United States v. Cherry Hill Textiles, Inc.</u>, 112 F.3d 1550, 1557 (Fed. Cir. 1997) ("The

language of [19 U.S.C. § ]1514, that a liquidation will be 'final and conclusive' unless protested,

is sufficiently broad that it indicates that Congress meant to foreclose unprotested issues from

---

[7] As the court noted in its order of September 30, 2021, time did not elapse for GLōB's appeal
until well after the filing of this case.  <u>See</u> <u>Order</u>, ECF No. 54 (explaining that "the court does not
possess subject matter jurisdiction to review entries that have already been liquidated except upon
commencement of an action challenging denial of protest" but noting that "GLōB may yet timely
file an action under 28 U.S.C. § 1581(a) contesting the denial of its protest").  By now, however,
the clock has run out on both Dr. Bronner's and GLōB's opportunities to timely appeal CBP's
denials.

Case 1:20-cv-00164-GSK   Document 72   Filed 08/18/22   Page 17 of 22

Consol. Court No. 20-00164                                                   Page 17
*PUBLIC VERSION*

being raised in any context, not simply to impose a prerequisite to bringing suit.")  Accordingly,

as the time to contest CBP's denial of protests has expired, the liquidation of both Dr. Bronner's

and GLōB's entries is final.  As a result, the court lacks subject-matter jurisdiction over those five

entries, and must dismiss the associated complaints.[8]

## II.     *The Unliquidated Entries*

With respect to the twelve remaining entries, Consolidated Plaintiffs challenge two aspects

of the EAPA Determinations: CBP's failure to consider whether there was a "change in

circumstances affecting the domestic industry" such that the entries were not covered merchandise,

and CPB's application of adverse inferences.   As neither challenge identifies an abuse of

discretion, or arbitrary and capricious action, on the part of CBP, the court denies Consolidated

Plaintiffs' motions for judgment on the agency record.[9]

### A.     *Changed Circumstances*

First, Consolidated Plaintiffs argue that CBP's failure to consider CP Kelco's "corporate

strategy shift" rendered its determination that the Subject Entries were covered merchandise

"arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with 19 U.S.C.

§ 1517(g)(2)(B)."  Consol. Pls.' Br. at 10.  More specifically, Consolidated Plaintiffs contend that

because evidence on the record demonstrated that "it is possible or even likely that CP Kelco is

not subject to material injury by oilfield xanthan produced in China," CBP was thus "required to

refer the matter to [Commerce]" for a changed circumstances review. [10]  Id. at 11.  Consolidated

---

[8] The court therefore does not reach Dr. Bronner's arguments that CBP did not establish by substantial evidence the origin of the Subject Entries, and that CBP's final determination was unlawfully delayed.  Pl.'s Br. at 10, 24.

[9] To the extent the court had, as GLōB argues, jurisdiction over GLōB's finally liquidated entries, its motion for judgment on the agency record would also be denied for the reasons stated herein.

[10] Commerce will initiate a review where "changed circumstances sufficient to warrant a review exist."  19 U.S.C. § 1675(b)(1)(C).  Commerce, not CBP, conducts changed circumstances review.

Plaintiffs conclude that, by failing to provide such referral, CBP failed to consider "the interests

and accuracy and fairness" such that it abused its discretion.  Id. at 13 (quoting Grobest & I-Mei

Indus. (Vietnam) Co. v. United States, 36 CIT 98, 123 (2012)).

Consolidated Plaintiffs are incorrect.  Their argument relies upon a single email chain

between CP Kelco and GLōB in which CP Kelco first states (in 2018) that "[r]egrettably, there is

presently no ZANFLO [oilfield xanthan gum] in stock and the plant has just advised us that there

will be no ZANFLO for the foreseeable future, due to a corporate strategy shift for the plant," and

a year later indicates that it has "resumed production of ZANFLO oilfield xanthan gum and [has]

large quantities available in two package sizes" but that "[a]s in the past, ZANFLO manufacturing

at the Oklahoma plant is inconsistent and not guaranteed. ZANFLO is presently available but it is

impossible to guess if that will continue."  Email from K. Norman to O. Zelaya re Glob Energy

PO01995 Kelco Invoice 91253561 (Jun. 6, 2018), P.D. 231; Emails from K. Norman to O. Zelaya

re ZANFLO Oilfield Xanthan Gum from KELCO (Jun. 5–19, 2019), P.D. 232.  Consolidated

Plaintiffs evidently conclude from this exchange that CP Kelco is no longer producing oilfield

xanthan gum in the United States, and is therefore not at risk of injury from low-cost imports of

oilfield xanthan gum from China.  Consol. Pls.' Br. at 10–11.  However, there is no indication in

the text of the emails that ZANFLO oilfield xanthan gum has been permanently discontinued --

rather, CP Kelco expressly states that it is manufacturing substantial quantities of ZANFLO.  P.D.

232.  It thus cannot be discerned how Consolidated Plaintiffs concluded that CP Kelco would

suffer no ill effects if the AD Order were amended to reduce or eliminate duties on oilfield xanthan

---

19 U.S.C. § 1675(b)(1) (stating under the heading "Reviews Based on Changed Circumstances"
that "[w]henever the administering authority or the [U.S. International Trade Commission]
receives information . . . which shows changed circumstances sufficient to warrant a review," it
"shall conduct a review of the determination or agreement") (emphasis added); see also 19 U.S.C.
§  1677(1) ("The term 'administering authority' means the Secretary of Commerce . . . .")

gum.  It likewise cannot be discerned on what basis Consolidated Plaintiffs conclude that the alleged changes in CP Kelco's production volume would necessitate a changed circumstances review for the AD Order covering "dry xanthan gum, whether or not coated or blended with other products [and] regardless of physical form, including but not limited to, solutions, slurries, dry powders of any particle size, or unground fiber." 78 Fed. Reg. at 43,143.  Consolidated Plaintiffs have thus identified no record evidence which plausibly supports their contention that changed circumstances review would be appropriate.

Even if such review were appropriate, Consolidated Plaintiffs do not plausibly allege that CBP was obligated to refer the matter to Commerce such that its failure to do so was an abuse of discretion.  Although they contend that CBP should have referred such review under 19 U.S.C. § 1517(b)(4), there is no indication that CBP was, as that section requires, "unable to determine whether the merchandise at issue is covered merchandise."  19 U.S.C. § 1517(b)(4)(A).  Indeed, Consolidated Plaintiffs themselves argue that the merchandise <u>should not</u> have been covered merchandise given changed circumstances, not that it <u>was not</u> covered merchandise under the AD Order in its current form.  <u>See</u> Consol. Pls.' Br. at 10.  Nor do Consolidated Plaintiffs make any argument that a determination of changed circumstances would retroactively apply to the Subject Entries.  Rather, as ORR correctly stated, "[w]hether there may be a change in circumstances affecting the domestic industry such that the [AD] Order's scope may be modified by Commerce at a later date does not change the fact that, at the time of entry, the xantha[n] gum was covered merchandise."  EAPA Review Determination at 18.  Accordingly, CBP did not abuse its discretion by declining to refer Consolidated Plaintiffs' request for a changed circumstances review to Commerce where such review was not essential to its determination of evasion.

### B.      Adverse Inferences

Statute provides that CBP may apply adverse inferences with respect to an interested party, importer, foreign producer or exporter, or foreign government where such party "has failed to cooperate by not acting to the best of [its] ability to comply with a request for information."  19 U.S.C. §§ 1517(c)(2)(A), 1517(c)(3)(A).  Such inferences may be used with respect to such interested, party, importer, foreign producer or exporter, or foreign government "without regard to whether another person involved in the same transaction or transactions under examination has provided the information sought."  19 U.S.C. § 1517(c)(3)(B).

Consolidated Plaintiffs argue that CBP acted arbitrarily and capriciously in determining that they failed to comply with the EAPA investigation and thus in applying adverse inferences with respect to the alleged manufacturers of the Subject Entries.  Consol. Pls.' Br. at 15.  Specifically, Consolidated Plaintiffs allege that they "cooperated with all of CBP's requests of information" and acted to the best of their ability, including by initiating "a legal investigation in India as to the validity of the certificates of origin and to determine the manufacturer(s) of the [Subject Entries]" such that adverse inferences were not appropriate.  Id. at 5, 6, 16.

In the EAPA Determination, CBP applied adverse inferences upon determining that "the claimed manufactures either did not respond to CBP's [requests for information], or failed to provide most of the information requested in the [request for information]."  EAPA Determination at 18.  "As a result, CBP [applied] adverse inferences and infer[red] that the claimed foreign manufacturers did not manufacture the imported xanthan gum," instead determining that the alleged Indian-origin xanthan gum was transshipped Chinese-origin xanthan gum.  Id. at 18–19.  Importantly, these adverse inferences were not applied to Consolidated Plaintiffs, but rather to the alleged foreign manufacturers -- the same manufacturers that the Consolidated Plaintiffs state they

**PUBLIC VERSION**

were forced to sue in order to "obtain documentation" relevant to the EAPA investigation.  Consol.

Pls.' Br. at 15.  As it is thus uncontroverted that the manufacturers were uncooperative with CBP's

review, CBP's application of adverse inferences was not arbitrary, capricious, or an abuse of

discretion.

To the extent Consolidated Plaintiffs argue that CBP should have delayed the application

of adverse inferences until more accurate information could be obtained through Consolidated

Plaintiffs' suit of the alleged foreign manufacturers, such argument is unavailing.  Consol. Pls.'

Reply at 10.  As noted above, adverse inferences may be used against an uncooperative party

"without regard to whether another person involved in the same transaction or transactions under

examination has provided the information sought."  19 U.S.C. § 1517(c)(3)(B).  Thus, CBP could

apply adverse inferences in response to the alleged manufacturers' failure to cooperate even if

Consolidated Plaintiffs obtained accurate information regarding the original manufacturer and

exporter of the Subject Entries.

Finally, as the Government correctly notes, CBP's inference that the xanthan gum was

produced in China rather than India is independently supported by the record.  Def.'s Br. at 27–

28.  As the EAPA Review Determination highlighted, Chem Fert reported to CBP that "it imports

the xanthan gum into India and then repacks [it]" for export, and that Consolidated Plaintiffs "knew

this fact very well" and had expressly requested that Chem Fert "import [xanthan gum] from China

and thereafter repack it into India and export it to the United States."  EAPA Review Determination

at 15 (citing Chem Fert Chems. Resp. to CBP's Request for Information at ¶ 05 (Aug. 27, 2019),

P.D. 133, C.D. 50).  Indeed, the EAPA Review Determination relies on this record evidence

without reference to any adverse inferences.  Id.  As a result, even if the court were to conclude

that the application of adverse inferences was an abuse of discretion, CBP nevertheless "examined

'the relevant data' and articulated 'a satisfactory explanation' for [its] decision" in relying on the record evidence to conclude that the Subject Entries consisted of xanthan gum from PRC. <u>Dep't of Com. v. New York</u>, 139 S. Ct. at 2569 (quoting <u>Motor Vehicle Mfrs. Ass'n</u>, 463 U.S. at 43).

## CONCLUSION

For the foregoing reasons, the court grants the Government's motion to dismiss Dr. Bronner's claims, and likewise dismisses GLōB's claims, for lack of subject-matter jurisdiction. The court further concludes that CBP's EAPA Determinations were not arbitrary, capricious, or an abuse of discretion with respect to Consolidated Plaintiffs Ascension, UMD, and Crude, and therefore denies the Consolidated Plaintiffs' motions for judgment on the agency record. CBP's EAPA Determinations are therefore affirmed.

**SO ORDERED.**

<u>/s/     *Gary S. Katzmann*</u>
Judge

Dated: <u>August 18, 2022</u>
      New York, New York